FRANCIS M. WELD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73526. Promulgated November 14, 1934.

*Charles C. Parlin, Esq.,* for the petitioner.
*J. M. Leinenkugel, Esq.,* for the respondent.

### OPINION.

SMITH: This proceeding involves a deficiency in petitioner's income tax for the calendar year 1930 in the amount of $21,148.32. The only question in issue is whether a profit of $239,864.50 realized by the petitioner in 1930 from the sale of 4,000 option warrants of the American & Foreign Power Co. is taxable as ordinary income, or as capital net gain under the provisions of section 101 of the Revenue Act of 1928.

The petitioner is, and for many years has been, a partner in White, Weld & Co., a brokerage firm in New York City. The firm of White, Weld & Co. conducts an ordinary brokerage business, buying and selling securities for customers, underwriting securities, and dealing in various investments. Some of its members are members of the New York Stock Exchange, the New York Curb Exchange, and other exchanges. The firm employs approximately 225 employees in its New York office.

The petitioner's principal occupation in 1930 was supervising the various business activities of White, Weld & Co. He personally

supervised most of the firm's purchases of securities which were later sold to customers. He was also a director in several large corporations.

During 1930 and prior years the petitioner did a large amount of trading in securities on his personal account. He was a man of considerable means and held varied investments. All of his trading in securities was done through the firm of White, Weld & Co., with which he maintained a personal account. He had no other account with any brokerage firm. In his dealings with the firm the petitioner was treated as any other customer. He was charged the regular commission and received the same rate of interest on his credit balance as other customers. The petitioner maintained a credit balance with the firm at all times during the year 1930, and in accordance with the firm's policy the securities which were bought or held for the petitioner's account were segregated and not mingled with the firm's securities. The petitioner made a practice of keeping his securities in a safe-deposit box of the Bankers Trust Co. When he desired to sell any of his securities he removed them from the safe-deposit box and delivered them to White, Weld & Co. for sale. No one else was authorized to buy or sell securities for the petitioner's account and the profits or losses shown on the petitioner's account were considered his personal profits or losses as distinguished from those of the firm of White, Weld & Co. None of the securities in his account were ever sold to customers except through a regular transaction conducted by White, Weld & Co.; he had no customers of his own to whom he sold securities. The petitioner devoted nearly all of his time to the firm's business.

The petitioner's account with White, Weld & Co. for 1930 shows the following transactions in the American & Foreign Power Co. option warrants:

*S*

| Date | Option warrants | Amount |
|------|----------------|--------|
| March 31 | 1,000 | $64,680.00 |
| April 3 | 1,000 | 69,805.00 |
| April 7 | 500 | 35,027.50 |
| " 7 | 500 | 35,027.50 |
| " 14 | 100 | 7,280.50 |
| " 15 | 400 | 29,322.00 |
| July 29 | 400 | 21,322.00 |
| Oct. 10 | 500 | 13,415.00 |
| " 15 | 500 | 12,052.50 |
| Nov. 5 | 1,000 | 23,605.00 |

*Purchases*

| Date | Option warrants | Amount |
|------|----------------|--------|
| Sept. 29 | 500 | $18,325.00 |
| Oct. 1 | 300 | 9,682.50 |
| " 1 | 200 | 6,380.00 |
| " 8 | 500 | 13,637.50 |
| " 14 | 500 | 11,687.50 |

Between December 19, 1927, and January 23, 1928, the petitioner purchased a total of 3,000 rights to subscribe to certain units, consisting of one share of preferred stock, series A, and four perpetual option warrants to buy common stock at $25 per share, at a total cost of $12,870. The petitioner thereafter subscribed to 1,000 units, upon which total payments were made in the amount of $100,000. The total cost of the 1,000 units purchased was therefore $112,870, of which $25,283 is allocable to the 4,000 warrants first sold in 1930. There is no dispute as to these facts or as to the amount of the petitioner's gain upon the sale of the 4,000 warrants in 1930, which was $239,864.50. The only question raised is whether the petitioner correctly reported the amount of gain as a capital net gain in his income tax return for 1930.

The certificates representing the petitioner's warrants of American & Foreign Power Co. were kept in his safe-deposit box at the Bankers Trust Co. Between March and July 1930 the petitioner removed the certificates for the warrants from his safe-deposit box and turned them over to White, Weld & Co. for sale. A profit resulted to the petitioner from such sales in the amount of $239,864.50, as above stated.

Section 101 of the Revenue Act of 1928 provides for the taxation of a capital net gain at a special rate of 12½ per centum of such gain. Capital gain is defined as a gain from the sale or exchange of capital assets consummated after December 31, 1921. "Capital assets" are defined as:

* * * property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. * * *

The respondent contends that the petitioner is not entitled to report its gain upon the sale of the American & Foreign Power Co. warrants at the net capital gain rate because the warrants were held by the petitioner "primarily for sale in the course of its trade or business." His argument is that the petitioner's purchases and sales of securities on his own account amounted to a trade or business within the meaning of the taxing statute. In support of such contention he cites *Jarvis* v. *Heiner*, 39 Fed. (2d) 361; *W. H. Ostenberg et al., Administrators*, 17 B. T. A. 738; and *Oscar E. Rehm*, 21 B. T. A. 243. He submits that the exhibits filed in this proceeding disclose that during the taxable year the petitioner's total volume in purchases and sales of securities exceeded one million dollars and that either purchases or sales were made by the petitioner "most every day throughout the entire year."

An analysis of the evidence does not fully bear out the contentions of the respondent. Although the total volume of purchases and sales of securities approximated one million dollars, the exhibits show a total of only 99 purchases and of 80 sales of stocks or other securities during the year. Many of these transactions were in the same shares or same class of securities. Several of the transactions resulted from a single purchase or sale order which the petitioner had placed with the brokerage firm. The petitioner testified that he devoted a very small fraction of his time to his own trading account and that there were many days when he did not spend any time on it and others when he spent only 15 minutes or half an hour.

Although it is undoubtedly true that the petitioner was ready to sell any of his investments when the market quotations would show him a satisfactory profit, the evidence does not show that these securities were held " primarily for sale in the course of " petitioner's trade or business, or in fact that the petitioner individually had a trade or business of buying and selling securities. His purchases and sales were such as might be made by any investor or retired business man. Such a person would not ordinarily be regarded as engaged in a business of buying and selling securities. To regard the petitioner's purchases and sales of securities as a trade or business within the contemplation of the statute does violence to the very language of the statute and to the purpose which Congress had in mind in providing for the taxing of gains from the sale of property held more than two years at the capital gain rate. That object was to facilitate sales of property which had been held for a long period and which had greatly appreciated in value. See Ways and Means Committee Report (p. 10) and Finance Committee Report (p. 12) on Revenue Act of 1921. The statute therefore provided that the profit could be taxed at the capital gain rate whether or not the property sold was connected with the taxpayer's trade or business, but specifically provided that property which would properly be included in the inventory was not to be so taxed, or where it was held primarily for sale in the course of the taxpayer's trade or business. Thus, we held in *John M. Welch, Sr.*, 19 B. T. A. 394; affirmed upon this point, 59 Fed. (2d) 1085, that real estate owned for more than two years by a dealer in real estate who was advertising it for sale and attempting to sell it was primarily held for sale in the course of his trade or business. Cf. *Ignaz Schwinn*, 9 B. T. A. 1304.

In *Dalton* v. *Bowers*, 287 U. S. 404, the question before the Supreme Court was whether Dalton, an inventor who had organized several corporations for the purpose of exploiting his inventions, and who endeavored to sell the corporate shares and thereby obtain a gain, was

entitled to deduct from gross income a net loss of a prior year in connection with such dealing in the shares of corporate stock. The Court observed:

\* \* \* Dalton was not regularly engaged in the business of buying and selling corporate stocks. He organized the manufacturing corporation, and took over all its shares with the intention of selling them at a profit. He treated it as something apart from his ordinary affairs, accepted credits for salaries as an officer, claimed loss to himself because of loans to it which had become worthless, and caused it to make returns for taxation distinct from his own. \* \* \*

The Court therefore held that the loss was not a net loss within the contemplation of section 204 (a) of the Revenue Act of 1921.

We are of opinion that a professional man, such as a lawyer or a doctor, who invests his surplus income in the purchase of stocks or other property with an idea of sale at a future date at a profit is not ordinarily to be regarded as holding such shares primarily for sale in the course of his trade or business. We think that the same observation applies to the petitioner at bar. He was not engaged as an individual in a trade or business of buying and selling securities; consequently, he could not be regarded as holding them primarily for sale in the course of his trade or business.

The petitioner is entitled to report his gain from the sale of the 4,000 warrants in the amount of $239,864.50 as a capital net gain.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

STERNHAGEN, TRAMMELL, VAN FOSSAN, GOODRICH, and LEECH dissent.