*27 OPINION.
Seawedl :
Whether petitioner is taxable on the net gain received by him in the sale of the Vacuum Oil Co. stock and/or the Liberty Bank stock, at the “ordinary rate” or at the “capital net gain rate” under the existing facts and admissions, depends upon the proper definition of “capital assets” as contained in section 101 of the Revenue Act of 1928. Subsection (c) (8) of that section defines “capital assets” to mean “property held by the taxpayer for more than two years (whether or not connected with his trade or business).” As respondent admits the stocks mentioned were held by petitioner for more than two years, and the parties are in agreement as to the amount of gain realized by petitioner upon its sale in the taxable year, there would be nothing further to decide if the subsection (c) (8) ended with the above quotation. But, by way of exception, the statute proceeds as follows: “but does not include stock in trade of *28 the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of hig trade or business.” If, therefore, the stocks in question fall within the enumerated exceptions contained in the further quoted part o.f the statute, they would not be “capital assets”, and the gain would not be “capital net gain” but “ordinary gain”, and the taxpayer would lose.
Under the adjudicated cases in the Board and the courts we are of opinion, and hold, that the transactions in controversy do not fall within said exceptions. The securities purchased by petitioner and sold for his account by the firm in 1930, were not held by petitioner as “stock in trade” or “primarily for sale in the course of his trade or business”, Taylor v. Commissioner, 76 Fed. (2d) 904; certiorari denied, 296 U. S. 594. The securities under the circumstances were not such as “would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year.” Clinton Gilbert, Jr., Executor, 20 B. T. A. 765, 771.
In a recent case where the petitioner was a member of a brokerage firm and did a large volume of trading in his personal account, and there were other facts comparable to those here present, we said :
Although it is undoubtedly true that the petitioner was ready to sell any of his investments when the market quotations would show him a satisfactory profit, the evidence does not show that these securities were held “primarily for sale in the course of” petitioner’s trade or business, or in fact that the petitioner individually had a trade or business of buying and selling securities. His purchases and sales were such as might be made by any investor or retired business man. Such a person would not ordinarily be regarded as engaged in a business of buying and selling securities. To regard the petitioner’s purchases and sales of securities as a trade or business within the contemplation of the statute does violence to the very language of the statute and to the purpose which Congress had in mind in providing for the taxing of gains from the sale of property held more than two years at the capital gain rate. That object was to facilitate sales of property which had been held for a long period and which had greatly appreciated in value. See Ways and Means Committee Report (p. 10) and Finance Committee Report (p. 12) on Revenue Act of 1921. * * *
* * * # * * *
We are of opinion that a professional man, such as a lawyer or a doctor, who invests his surplus income in the purchase of stocks or other property with an idea of sale at a future date at a profit is not ordinarily to be regarded as holding such shares primarily for sale in the course of his trade or business. We think that the same observation applies to the petitioner at bar. He was not engaged as an individual in a trade or business of buying and selling securities ; consequently, he could not be regarded as holding them primarily for sale in the course of his trade or business.
The petitioner is entitled to report his gain from the sale of the 4,000 warrants in the amount of $239,864.50 as a capital net gain. [Francis M. Weld, 31 B. T. A. 600.]
*29 See also Albert Raiss, 21 B. T. A. 593; Ignaz Schwinn, 9 B. T. A. 1304.
We sustain petitioner and hold that respondent was in error.
Judgment of no deficiency will be entered.