## CHEMICAL BANK & TRUST CO. et al. v. UNITED STATES.

### No. 42986.

Court of Claims.

Nov. 1, 1937.

A. Harding Paul, of Washington, D. C., for plaintiffs.

James W. Morris, Asst. Atty. Gen., and Robert N. Anderson, Fred K. Dyar, and J. H. Sheppard, all of Washington, D. C., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The sole issue in this case is whether the gain derived by the deceased taxpayer, William Henry Williams, from the sale of 1,830 shares of the common stock of the Pacific Gas & Electric Company, during the year 1930, is taxable as a "capital net gain," as contended by the plaintiffs, or as ordinary income, as contended by the defendant. The determination of this issue depends upon the answer to the question as to whether these shares of stock were "capital assets," and this question in turn depends entirely upon the decision of whether or not the decedent was in the trade or business of buying and selling securities, and, if in such trade or business, whether or not the Pacific Gas & Electric Company stock was held primarily by him for sale in the course thereof.

The pertinent provisions of law are found in the Revenue Act of 1928 (45 Stat. 791) and read:

"Section 101. Capital Net Gains and Losses.

"(a) *Tax in Case of Capital Net Gain.* —In the case of any taxpayer, other than a corporation, who for any taxable year derives a capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted and the total tax shall be this amount plus $12\frac{1}{2}$ per centum of the capital net gain. * * *

"(c) *Definitions.* For the purposes of this title—

"(1) 'Capital gain' means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921. * * *

"(5) 'Capital net gain' means the excess of the total amount of capital gain over the sum of (A) the capital deductions and capital losses, plus (B) the amount, if any, by which the ordinary deductions exceed the gross income computed without including capital gains. * * *

"(8) 'Capital assets' means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other

property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business." 26 U.S.C.A. § 101 (a), (c) (1, 5, 8) note.

■ The findings disclose that without question the principal occupation of the decedent was that of directing the policies of numerous railroads. That had been his principal occupation for many years, and during the taxable year 1930 he was a director or officer of 60 roads and was chairman of the board of the Wabash Railroad Company. Since, however, it is well settled that a taxpayer may be engaged in more than one trade or business, Mente v. Eisner (C.C.A.) 266 F. 161, 11 A.L.R. 496; Goldberg v. Commissioner, 59 App. D.C. 147, 36 F.(2d) 551, the controlling question for decision is whether the activities of the decedent in dealing in stocks in his margin account with Reynolds, Fish, & Co., stockbrokers, were sufficient to characterize such activities as a trade or business. If the decedent in addition to his regular and principal occupation of railroad executive was also engaged in the trade or business of dealing in securities, and the Pacific Gas & Electric Company stock involved was held by him primarily for sale in the course of such trade or business, the profit derived on the sale of the stock was properly taxable as ordinary income.

■ During the year 1930, and for many years prior thereto, and up until his death in 1931, the decedent maintained a brokerage stock account with Reynolds, Fish & Co., stockbrokers in the city of New York. At various times he had some bonds, also certain stocks acquired from sources other than through his brokers, which when acquired were placed to the credit of the account. While various shares of corporate stock other than the Pacific Gas & Electric Company, involved in this suit, were bought and sold by the decedent during this period, the stock of that company, as the defendant says in its brief, "appears to be the prime stock in the decedent's portfolio." Between December 21, 1926, and March 23, 1928, the decedent purchased 14,000 shares of this stock at a cost of more than $470,-000. He did not sell a single share of such stock until May 16, 1928, although it greatly increased in value subsequent to its purchase. From December 21, 1926, until his

death in October 1931, he owned shares of stock in this company. This circumstance justifies the conclusion that the stock was purchased and held by the decedent purely as an investment and was not held primarily for sale in the course of his trade or business.

The decedent's office was located in the city of New York. He, however, spent considerable of his time in making trips over the lines of the various railroad companies of which he was an officer. He had a country home at Lyon Mountain, N. Y., where he owned and operated a dairy farm, and where he usually spent his week-ends. When in his office, he spent on an average of eight hours daily, except Sundays and holidays, on railroad matters, and spent yet longer hours on railroad matters when making trips over the railroad lines. It was his practice when in his New York office to have the vice-president of one of the railroads supervised by him prepare and submit to him two or three times daily a list of approximately thirty stocks, showing their market quotations. He used this list to keep in touch with market quotations and fluctuations in the stocks in which he was interested as a railroad official or as an investor. Fifteen or twenty of the stocks on the list submitted were stocks of railroads, both those in which he was interested as an officer and stocks of railroads of a competing character. The other stocks on the list were stocks in which he was interested as an investor, including stock of the Pacific Gas & Electric Company. To the list thus submitted he devoted ten or fifteen minutes of his time daily when in the office. During such times as his railroad duties took him over various lines of which he had supervision, and the week-ends spent at his country home, no list was prepared or submitted to him. At his direction orders for the purchase and sale of stocks were placed by the vice-president of one of his companies with the brokers. After the orders had been executed, monthly statements would be submitted to him by the brokers. At times he used his brokerage account as a bank account, directing his brokers to pay his income tax out of the same, and occasionally he checked against his brokerage account for expenses and cash.

The record before us will not sustain a holding that the decedent's market operations during the taxable year 1930 constituted a trade or business within the meaning of the statute. The time consumed by him in the purchase and sale of stocks compos-

ing his margin account with Reynolds, Fish & Co. was practically negligible, being limited to not more than ten or fifteen minutes a day when in his New York office compared to the eight hours a day devoted by him to railroad matters. It does not appear that he at any time bought and sold stocks through any other brokerage concern, and there is no testimony whatever to the effect that he engaged in the purchase and sale of stocks for the purpose of earning a livelihood or that he ever regarded his activities in the purchase of securities as a trade or business. The inference to be drawn from the entire record is that decedent's purchase and sale of stocks was not a part of any business he was carrying on. He received a very large salary for his services as a railroad executive, ranging from $112,666.64 in 1924 to $253,797.66 in 1930. In these circumstances his activities in the purchase and sale of stocks must be regarded as such as might be made by an ordinary business or professional man with surplus capital, and not as constituting a trade or business. These activities, as frequently held, do not constitute carrying on a business or trade. Consequently the securities involved in this case cannot be said to have been held "primarily for sale" in the course of decedent's trade or business. They did not constitute a part of his stock in trade, and the profits made by him on their sale, they having been held by him for more than two years, constituted capital net gains and were taxable as such.

The plaintiffs are entitled to recover. Coulter v. Commissioner, 32 B.T.A. 617; Bedell v. Commissioner (C.C.A.) 30 F.(2d) 622; Gibbs v. Commissioner, 34 B.T.A. 1028, 1029; Trost v. Commissioner, 34 B.T.A. 24; Weld v. Commissioner, 31 B.T.A. 600.

Judgment is therefore awarded plaintiffs in the sum of $6,757.62, with interest. It is so ordered.