**POPE et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 6724.

Circuit Court of Appeals, Sixth Circuit.

May 14, 1935.

Raymond K. Dykema, of Detroit, Mich. (Benjamin J. Manley and Dykema, Jones & Wheat, all of Detroit, Mich., on the brief), for petitioners.

Frank J. Wideman, of Washington, D. C. (Sewall Key and Helen R. Carloss, both of Washington, D. C., on the brief), for respondent.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

MOORMAN, Circuit Judge.

Each of the petitioners is a retired civil engineer and a resident of Detroit, Mich. Prior to 1921 they were employed by the Canadian Bridge Company, which had its main office in Walkerville, Ontario. In 1919 Charles T. Miller, secretary-treasurer of the bridge company, became interested in the purchase of two tracts of land near Walkerville and Windsor, Ontario. At his suggestion a number of men, including the petitioners, formed a syndicate and purchased the land. The petitioners took no part in the purchase except to contribute their share of the purchase price. In 1920, petitioner McMath learned that an adjoining tract of land was for sale, and he and petitioner Pope arranged for its purchase by the syndicate. The three tracts were then conveyed by the syndicate to the Essex Real Estate Company, Limited, in trust for the syndicate members, with full power in the company "to manage, mortgage, lease, sell and dispose of the said lands and rights en bloc or in parcels, as it may see fit." In 1923 the Essex Company purchased for the syndicate another plot of land adjoining the tracts purchased in 1919, and a supplemental trust indenture was executed giving the company the same powers as to that tract.

At the time of the purchases and later when the land was sold the petitioners were stockholders and directors of the Essex Company. McMath was its president from 1913 to 1928, and Pope has been its vice president since 1921. Miller was likewise a director and officer; he was the manager of the company on a salary and, as such, handled the syndicate property. Some of the members of the syndicate, though, were not stockholders of the company. Neither of the petitioners ever received a salary from it. After they retired from the bridge company in 1921, their consultations with Miller were infrequent. At intervals between 1922 and 1927, the Essex Company subdivided parts of the land into lots and sold many of them from 1925 to 1928. It maintained no sales office, however, but sold the lots through independent brokers on a commission basis. The petitioners received the proceeds of the sales in the proportions of their investments. In their income tax returns for the tax years 1925 to 1928, inclusive, they returned their profits as capital gains. The Commissioner treated them as ordinary income, and determined deficiencies accordingly. The Board of Tax Appeals affirmed the Commissioner's determination. 28 B. T. A. 1255.

Section 208 of the Revenue Acts of 1924 and 1926 (26 USCA § 939 note) and section 101 of the Revenue Act of 1928 (26 USCA § 2101) provide that taxable gains derived from the sale of capital assets shall be taxed at special rates. These statutes define "capital assets" as property held by the taxpayer for more than two years (whether or not connected with his trade or business) but not including stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. The sole question presented on this review is whether the evidence is legally sufficient to sustain the Board's finding that the lands were held by petitioners primarily for sale in the course of their trade or business. Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289; Tracy v. Commissioner, 53 F.(2d) 575 (6 C. C. A.).

The respondent introduced no testimony before the Board of Tax Appeals. Both of the petitioners testified that they joined other members of the syndicate in putting up the money to buy the land because they thought it was a good investment, and not for the purpose of engaging in the business of buying and selling lands. Neither of them has ever been licensed as a real estate dealer. While both held stock in the Essex Company, neither was ever active in the company, and after they purchased the tract for the syndicate in 1920, neither ever bought or sold any real estate.

The facts in the case are different from those of any other decided case to which we have been referred. Perhaps the closest analogy is Phipps v. Commissioner, 54 F. (2d) 469 (2 C. C. A.). In that case the taxpayers bought a tract of land in Florida, divided it into 70 lots, improved them, set prices on them, and turned them over to brokers for sale. The taxpayers took no active part in the sale. Aside from the land on which they built their own residences, two of the taxpayers also bought other tracts of land which they did not improve. It was held that they were entitled to the benefits of an assessment under section 208 of the Revenue Act of 1924, the court being of opinion that their activities did not amount to a trade or business within the meaning of the statute. Welch v. Commissioner, 59 F.(2d) 1085, decided by this court without opinion, is not in point, for there it appeared that the taxpayer advertised as a real estate broker and was as active in the business as his health would permit. 19 B. T. A. 394. Other decisions on analogous statutes, cited in argument, are not helpful.

It may be assumed that Miller and the Essex Company were engaged in the real estate business, but the status of their profits is not in controversy. The question is whether a director and officer of a corporation, owning a substantial amount of its stock but not active in its affairs, is engaged in the business in which the corporation is engaged. We have been referred to no case holding that he is. Such a holding would defeat one of the purposes of section 208 of the Revenue Acts of 1924 and 1926, re-enacted in 1928, which was to remove a deterrent to the conversion of capital assets. Burnet v. Harmel, 287 U. S. 103, 106, 53 S. Ct. 74, 77 L. Ed. 199. By reason of their stock ownership in and official relation to the Essex Company the petitioners could, of course, have engaged in the real estate business, but in our opinion their activities in the company were not such as to justify an inference that they were so engaged. We think the purchase of the land is to be treated as an investment, and the investment having been made, the sale through real es-

tate brokers is to be regarded as a conversion of capital assets and not a sale by the petitioners in the course of a trade or business.

The order of the Board of Tax Appeals is reversed, and the cause remanded for further proceedings.