*150 OPINION.
Steknhagen:
1. The Commissioner denied the petitioner’s claim that the Millbrae profits were capital gains and held that the profits were ordinary gains because the property was “held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business”, Revenue Acts of 1934 and 1936, sec. 117 (b). This is true, as shown by the evidence upon which the finding has been based, A. R. Calvelli, 43 B. T. A. 6. The petitioner suggests that this opinion be withheld until decision on review of Florence H. Ehrman, 41 B. T. A. 652 (on appeal C. C. A., 9th Cir.). However, that case is distinguishable and would not require a decision upholding the petitioner’s contention even if the Board’s decision should be reversed. This is not to be expected, see Welch v. Solomon, 99 Fed. (2d) 41; Richards v. Commissioner, 81 Fed. (2d) 369. The petitioner acquired his interest in the land and the venture for the sake of the profit to be derived from its exploitation. He bought it and held it primarily for sale to customers and not to deal with as a whole or as an investment. The Commissioner’s determination is sustained.
2. The Commissioner held that the profit received by petitioner as his share of the proceeds of sales of lots in the Marina tract was not capital gain. The evidence establishes and the finding has been made that the property was held by petitioner and his associates primarily for sale to customers in the ordinary course of trade or business. The Commissioner’s determination was correct. There is no reason to debate whether the group constituted a partnership, for that is irrelevant; and it is also unimportant whether petitioner may have been in the real estate business completely or only to some extent. The question is whether the evidence shows that the property from which the particular income was derived was within the description of the statute, Thompson Lumber Co., 43 B. T. A. 726. We hold that it was within the statutory exception to the definition of capital assets. The determination is sustained.
3. The Fillmore Street property was treated by the Commissioner as within the definition of a capital asset, the loss on the sale of which was limited to $2,000, The evidence shows, however, that the *151 petitioner’s interest was acquired by him as an incident of his business and for the purpose of sale for a profit. Although it was, for the time being, rented and yielded an income, this was not the primary purpose for which it was acquired or held. It was conveyed to avoid foreclosure and a deficiency judgment. This was a sale, Helvering v. Hammel, 311 U. S. 504, but not of a capital asset. The loss is deductible without the limit of capital losses. The determination is reversed.
4. The petitioner on his returns deducted $11,011.81 for 1935, $18,595.62 for 1936, and $17,035.57 for 1937, as “rent, repairs and other expenses,” $1,571.20, $1,947.05, and $1,379.65, respectively, were called “general expenses.” The Commissioner disallowed $1,178.40, $1,428.47, and $1,034.74 of these amounts because they were “not substantiated.” In other words, he allowed about one-fourth of the amounts deducted as general expenses. All that the evidence shows is petitioner’s general statement of how the amounts were spent. Presumably the Commissioner had as much information as this when he made the determination and was unable to verify it. It can not be said that petitioner’s reiteration on the witness stand gives the claim any greater support. This is not like the situation in Cohan v. Commissioner, 39 Fed. (2d) 540, for the Commissioner has not disallowed the entire deduction. He has recognized that “something was spent”, and has made presumably “as close an approximation” as he could. There is nothing upon which the Board can base a different or greater approximation. The determination is sustained.
5. The Commissioner reduced the deduction for depreciation of furnishings of the Pennwell Apartments by $619.57, $610.64, and $621.96, respectively. For no reason stated in the deficiency notice, he apparently adopted a computation based on the depreciation already deducted for the prior years, a remaining life of six years for the furnishings on hand, and a life of ten years for the current additions, thus allowing deduction of $66.24, $75.17 and $77.59, respectively.
We can find no justification for the Commissioner’s disallowance. As shown by the evidence, six or seven years is not too short an estimated life for the furnishings of these apartments as a basis for a reasonable allowance for depreciation. This should properly include the cost in 1931 of the refrigeration system, irrespective of whether that system may for some legal purposes be regarded as part of the realty. The amounts deducted by the petitioner in the years in question are shown to be reasonable. The determination is reversed and the deductions taken by the petitioner are sustained.
*152 6. The Commissioner included in petitioner’s income the earnings of his minor son- These amounts were paid to the son by petitioner. It is not clear in the record how these amounts are accounted for in the returns. The deficiency notice states that a deduction of $265 was taken on the 1935 return for compensation paid by petitioner to two minor sons; that for 1936 petitioner failed to report $275 salaries or wages received by a minor son; and that for 1937 $100 was included by the Commissioner as the earnings of a minor son.
Ever since the Revenue Act of 1918, Regulations 45, article 291, through the current regulations, Regulations 103, section 19.2A-1, the regulations have consistently provided that allowances of a father to a minor child to whose services he is entitled are not deductible. This long unquestioned existence is alone a strong support for the rule. However, it is manifestly correct. There is nothing besides the payments themselves to suggest that the petitioner may have emancipated the child, and the argument to that effect can not be adopted.
The Commissioner’s treatment of the payments to petitioner’s minor son is sustained.
7. The Commissioner included in petitioner’s income $547.50 in 1936 and $1,000 in 1937, being advanced rents received. Petitioner argues that because his accounts are kept on the accrual basis and these amounts were by California custom the advance payments for the last month of the tenancy, they must be accounted for as income in the year in which that last month occurs. The argument must be rejected. The amounts, having been received by petitioner in the earlier years, were his income in those years, even though the accrual method was used, Commissioner v. Lyon, 97 Fed. (2d) 70. The determination is sustained.

Decision will be entered? imder Rule 50.