## BOOMHOWER v. UNITED STATES.
### Civ. No. 329.

District Court, N. D. Iowa,
Central Division.

Dec. 23, 1947.

998

Leslie L. Boomhower and N. Levinson, both of Mason City, Iowa, for plaintiff.

T. E. Diamond, U. S. Dist. Atty., of Sioux City, Iowa, Wm. B. Danforth, Asst. U. S. Dist. Atty., of Mason City, Iowa, and Ruppert Bingham, Sp. Asst. to the Atty. Gen., for defendant.

GRAVEN, District Judge.

Case involving question as to whether profit made by a lawyer from the sale of lots is taxable as ordinary income resulting from the conducting of a real estate business. The plaintiff, Leslie R. Boomhower, in this action seeks to recover additional income tax assessments made upon him for the years of 1941 and 1943 and paid by him under protest. The transactions involved are sales of lots of land owned by

the plaintiff which he claims brought him only profits gained from the conversion of capital assets and are hence taxable only as defined in 26 U.S.C.A. Int.Rev.Code, § 117. That Section provides in part as follows: "Capital assets. The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l), or an obligation of the United States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue, or real property used in the trade or business of the taxpayer; * * *"

The United States claims these profits to be ordinary income from the conducting of a real estate business by the plaintiff and hence are taxable as provided in 26 U.S.C.A. Int.Rev.Code, § 22. That Section provides as follows: " 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

The plaintiff denies that he has ever conducted such a business, alleging that he has, since graduating from Drake University Law College in 1914, been engaged solely in the practice of law.

At all times since 1920 the plaintiff has been the trustee of a trust which has been within the probate jurisdiction of the District Court of Iowa in and for Cerro Gordo County. One George W. Hanks was beneficiary of the trust during his lifetime with remainder to certain other beneficiaries. As trustee the plaintiff had the duty of investing the funds of the trust. In May 1928 he invested a portion of the funds of the trust in a first mortgage on a twenty-acre tract of unimproved pasture land located within the corporate limits of Mason City, Iowa. The 1940 population of Mason City, Iowa, was 27,080. Subsequently the owners of the tract defaulted in the payment of the mortgage. The plaintiff as trustee foreclosed the mortgage. No redemption was made and in 1932 a sheriff's deed was issued to the plaintiff as trustee. The tract so acquired produced very little income and was an undesirable asset for the trust. The plaintiff tried to find a buyer for the tract owned by the trust but his efforts were unsuccessful. Upon the request of those beneficially interested in the trust and pursuant to court authorization the plaintiff paid the trust the full amount of its investment in the tract and in May, 1936, became the owner of the tract individually.

After acquiring title to the tract individually, the plaintiff continued to try to find a purchaser for it but his efforts were again unsuccessful. The plaintiff then attempted to liquidate his investment by selling off parts of the tract without platting or subdividing it. He sold two lots by a metes and bounds description when he learned that a city ordinance prohibited further sales without platting. A concern known as the Fullerton Lumber Company was then engaged in the retail lumber business in Mason City and was desirous of stimulating the building of houses. The Fullerton Lumber Company and a local contractor made arrangements under which the Fullerton Lumber Company would furnish the materials for houses and the contractor would build them for sale. The Fullerton Lumber Company and the contractor were of the view that the tract owned by the plaintiff would be a good site for their building operations. Some time prior to 1939 the Fullerton Lumber Company and the contractor proposed to the plaintiff that they would build some houses

on the tract and that as each house was sold the plaintiff would be paid for the lot upon which it was built. The Fullerton Lumber Company and the contractor were acting independently and the plaintiff had no interest in their operations. The only interest of the plaintiff was to receive the purchase price of the lot involved. The record is not clear as to how many homes were built by the Fullerton Lumber Company and the contractor on the tract or how many of the lots involved in the present case were sold in connection with the operations of the local contractor and the Fullerton Company. The Fullerton Lumber Company and the contractor had no option on any lots or particular number of lots. In certain cases the plaintiff sold lots directly to parties who then made their own arrangements with builders and lumber companies.

Because of the city ordinance the plaintiff could not sell any more lots either to customers of the Fullerton Lumber Company and the contractor or to anyone else without platting. In 1939 the plaintiff platted a five-acre section of the tract known as Broadlawns Addition which was accepted by the City of Mason City on May 1st, 1939. In 1940 he platted a second five-acre section known as Broadlawn Second Addition which was accepted by the City of Mason City on June 30, 1940. In 1946 he platted a third ten-acre section known as Broadlawn Third Addition which was accepted by the City of Mason City on July 15, 1946. The last plat was made subsequent to the tax periods now under consideration. The ground included in this last plat was subsequently conveyed by the plaintiff to his children and he no longer has any interest in it. It was a requisite to the acceptance of the plats by the City of Mason City that streets be laid out, brought to grade and improved and that sewage, water and other facilities be made available. In Iowa such improvements may be made by a city and the costs assessed specially against the benefited property or a property owner may arrange for such improvements himself and pay the cost directly. The plaintiff paid for such improvements directly and added to the purchase price of each lot its proportionate share of the actual costs of the im-

provements. The lots involved in this case were in Broadlawns Addition and Broadlawns Second Addition. These two additions comprised thirty-six lots, two of which had been sold prior to platting. All of the lots in those additions have now been sold except four and one-half which are still owned by the plaintiff. The present case has to do with the sale of seven of the lots sold in 1941 and one lot sold in 1943. No sales of lots were made in 1942. Apparently some of the lots involved in this case were sold in connection with the house-building operations of the Fullerton Lumber Company and the contractor. Some of the lots involved were sold for cash and some on the installment plan. The profit on the sale of the lots in question constituted only a small part of the taxpayer's income for the year 1941 and an insignificant part of the taxpayer's income for the year 1943.

Some two or three years ago a sign was placed upon the section known as Broadlawns Third Addition stating that lots were for sale and giving the telephone number of the plaintiff. No lots had been sold in Broadlawns Third Addition up to the time it was conveyed to the plaintiff's children. The local daily paper from time to time carried on what is referred to as "booster" campaigns for the purpose of acquainting the public with the industries of Mason City. One of the industries which was publicized from time to time along with others was the building industry. The plaintiff was solicited to purchase and did purchase a one-half page advertisement in the edition of the local daily for October 31, 1939, advertising lots for sale in Broadlawns Addition. That advertisement was run in a so-called booster edition of the paper in the section related to home building activities. In 1941 the local daily solicited the plaintiff to purchase space in the page of the paper known as the industrial page. Under the arrangement the paper was to run a write-up of Broadlawns Addition on the industrial page, and, in addition would run a smaller advertisement for thirty-five weeks. In accordance with the agreement the paper published a write-up of Broadlawns Addition in its issue of May 12, 1941, and carried a small advertisement in regard to the lots on the indus-

trial page of the paper for thirty-five weeks commencing with the issue of February 10, 1941. In the issue of the paper of June 13, 1941, in the section relating to the building industry, there was a quarter page advertisement publicizing lots for sale in Broadlawns Addition. The plaintiff employed no real estate brokers to sell any of the lots in the tract in question. Outside of the acquisition of the tract in question and the purchase of a home, the plaintiff has not purchased or acquired any interest in real estate since 1932. The plaintiff by inheritance acquired a two-thirds interest in a farm in Worth County, Iowa, and by purchase acquired three farms in Cerro Gordo County, Iowa. All of those farms were acquired prior to 1932. So far as appears, the plaintiff made no sales of farm land. The plaintiff in connection with his law practice by isolated transactions acquired three or four small houses and some other lots in Mason City, some of which he still owns.

At all times since his graduation from law school the plaintiff has been engaged in the practice of law at Mason City, Iowa. It appears that he has and has had an unusually large and active law practice and that he has been especially active in trial work. No other office than his law office was maintained by the plaintiff for the sale of lots. Those desiring to purchase lots consulted the plaintiff either at his home or at his law office. Except for the profits realized by the plaintiff from the sale of lots from the tract in question the plaintiff's income has been realized from the practice of law and the returns from the farms owned by him and from rentals from some of the small houses owned by him. The plaintiff did not break into the daily professional routine of his law practice in connection with the sale and improvement of the tract. The time spent by the plaintiff in connection with the tract was occasional in character.

The United States claims that the improvement of the tract, the platting of it, the advertising of the lots for sale, and the handling of their sale constituted more than the usual activity connected with the liquidation of a capital investment, and consti-

tuted activity incident to the operation of a real estate business.

The acquisition and sale of land by a taxpayer may represent either the conducting of a real estate business or an investment and conversion of a capital asset. For the purpose of determining which rate of taxation shall be applied, it is necessary to interpret the conduct of the taxpayer in relation to the particular land involved. If his conduct is such that he may be said to be in the business of selling land, his gains must be taxed according to 26 U.S. C.A. Int.Rev.Code, § 22, pertaining to computation of gross income as " * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property * * * " and as to that land he may not claim the reduced rate applicable to one whose status is that of an investor.

The purpose of the statutory allowance of a lower rate of taxation on the gain derived from the conversion of capital assets is to alleviate the burden which would be incurred by the taxpayer, should that gain be classified as ordinary income over a short tax period when, in fact, it had accrued over a long period of investment, and to remove the deterrent effect of that burden on such conversions, Burnet v. Harmel, 1932, 287 U.S. 103, 106, 53 S.Ct. 74, 77 L.Ed. 199. In that case the Court refers to House Report No. 350, Ways and Means Committee, 67th Cong., 1st Session on the Revenue Bill of 1921, p. 10.

Hence, a differentiation is made in the tax rate between receipts on one hand, from personal or professional services, business or trade, or from interest, dividends, rents and the like, and on the other hand, from gains or losses accruing from the investment of capital assets in such a manner that the appreciation in value of the capital asset will be taxed upon its conversion in a rough approximation equal to the amount which would have been paid had a tax been paid each year on that year's appreciation in value. Rieger v. Commissioner, 6 Cir., 1943, 139 F.2d 618, 621; Commissioner v. Shapiro, 6 Cir., 1942, 125 F.2d 532, 535, 536, 144 A.L.R. 349;

Kenan v. Commissioner, 2 Cir., 1940, 114 F.2d 217, 220; See also Richards v. Commissioner, 9 Cir., 1936, 81 F.2d 369, 372, 106 A.L.R. 249.

Several tests have been referred to by the courts in analyzing the nature of the transactions by a taxpayer for the purpose of determining which above-mentioned sections of the Internal Revenue Law shall be applied. Continuity of sales or sales-related activity over a period of time. Snell v. Commissioner, 5 Cir., 1938, 97 F. 2d 891; Bedell v. Commissioner, 2 Cir., 1929, 30 F.2d 622; Brown v. Commissioner, 5 Cir., 1944, 143 F.2d 468. Frequency of sales, as opposed to isolated transactions. Rogers v. United States, 1930, 41 F.2d 865, 868, 70 Ct.Cl. 159; Harriss v. Commissioner, 2 Cir., 1944, 143 F.2d 279, 280; Miller v. Commissioner, 9 Cir., 1939, 102 F.2d 476, 479. The activity of the seller or those acting under his instructions or in his behalf, or the time and labor given to effect the transactions, such as by improvements or advertisement to attract purchasers. Oliver v. Commissioner, 4 Cir., 1943, 138 F.2d 910; Snell v. Commissioner, 5 Cir., 1938, 97 F.2d 891; Richards v. Commissioner, 9 Cir., 1941, 81 F.2d 369, 106 A.L.R. 249. The extent or substantiality of the transactions. Miller v. Commissioner, 9 Cir., 1939, 102 F.2d 476, 479. The reasons for, purpose, or nature of the acquisition of the subject matter. Harriss v. Commissioner, 2 Cir., 1944, 143 F.2d 279, Kanawha Valley Bank v. Commissioner, 4 T.C. 252; Thompson Lumber Co. v. Commissioner, 43 B.T.A. 726. Some courts have similarly attached weight to the reasons for, purpose, or nature of the sale of the subject matter. A taxpayer's claim that his only desire was to convert or liquidate an asset rather than to conduct a business would then be of importance for judicial consideration. This "liquidation test," however, has generally been rejected by a recognition that the activity of the taxpayer in disposing of the subject matter could reach the proportions of one doing business regardless of his impelling motives. Thus, in Ehrman v. Commissioner, 9 Cir., 1941, 120 F.2d 607, 610, the Court states: "We fail to see that the reasons behind a person's entering into a business—whether it is to make money or whether it is to liquidate—should be determinative of the question of whether or not the gains resulting from sales are ordinary gains or capital gains. The sole question is—were the taxpayers in the business of subdividing real estate? If they were, then it seems indisputable that the property sold falls within the exception in the definition of capital assets in the statute above quoted—that is, that it constituted 'property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.'"

In the recent case of Guthrie v. Jones, D. C.Okl., 1947, 72 F.Supp. 784, 785, the court states that the existence of no one of these factors is decisive in finding the taxpayer to be engaged in a real estate business, but rather, that "the solution must depend upon all the pertinent facts and their relative importance in each case." The United States Supreme Court has expressed the view that although such tests as extent, continuity, variety, and regularity have frequently been applied in finding that a business existed or not, this is not a "fixed administrative construction," in determining the status of all types of activities, and the facts of each case must be determinative. Higgins v. Commissioner, 312 U.S. 212, 216, 217, 61 S.Ct. 475, 85 L.Ed 783. See also United States v. Pyne, 1941, 313 U.S. 127, 61 S.Ct. 893, 85 L.Ed. 1231; Commissioner v. Scottish American Investment Co., Ltd., 1944, 323 U.S. 119, 65 S.Ct. 169, 89 L.Ed. 113; Rogers v. United States, D. C.Conn., 1946, 69 F.Supp. 8.

█ It would seem that to carry on a business conveys the idea of progression, continuity and sustained and normally incident activity, and does not mean the performance of single disconnected acts. Continuity, in the case of a real estate enterprise, would hence seem to connote that characteristic of the business as a "going concern," as distinguished from sporadic activity lacking the studied purpose or continuing objective of the entrepreneur-realtor. The occasional purchase and resale of land by an investor speculating on a rise in real estate values, does not, in the absence of other circumstances, give rise to the status of his being a dealer in real estate. Beddell v. Commissioner, 2 Cir.,

1929, 30 F.2d 622. Judge Learned Hand states in that case (page 624): "A trader on an exchange, who makes a living in buying and selling securities or commodities, may be said to carry on a 'business'; a person who frequents brokers' offices, and continually dabbles in real estate is conceivably quite different. Most men who have capital change their investments, and may speculate all the time; we should hardly calls this a business, though the line is undoubtedly hard to draw." In speaking of a year's inactivity in any real estate dealings by the complaining taxpayer, Judge Learned Hand continues (page 625), "In any business there will indeed be periods of inactivity, during which it would hardly be true to say that the business was not being 'regularly carried on.' Such in any case would be plainly true when one was speaking of an ordinary commercial or industrial enterprise. It seems to us, however, impossible to regard the business of buying and selling securities and real estate as having a similar continuity when for a whole year the person supposedly engaged in it does nothing at all or substantially nothing. Assuming that he is ever in a business, while so engaged, he will be in it and out of it as he trades or does not. Here again it is a question of degree, and the length of the intervals will determine the conclusion. An interval of two weeks would scarcely count; but, when for a year he does nothing, it seems to us past reason to speak of the supposititious business as being still carried on." There later came before the same court the case of Phipps v. Commissioner, 2 Cir., 1931, 54 F.2d 469, in which the taxpayers had in 1916, purchased, platted, and improved extensively, a tract of land in Florida. In that case it was held that because subsequent purchases and activity in real estate were few and intermittent, and because all activity concerning development of the platted tracts had ceased, except to hold for sale through brokers' offices, even though these sales netted over $40,000 in each of the tax years in question, seven and eight years after the improvement, the sales of land were held to lack the continuity of activity and absorption of time of the tax-payers to make them more than investors. On the other hand, in the case of Richards v. Commissioner, 9 Cir., 1936, 81 F.2d 369, 106 A.L.R. 249, the taxpayer who through his agent was actively engaged in subdivision, improvement, and selling work during the tax years in question for the obvious reason of obtaining a larger profit was held to be in the business of selling real estate. Such management activity by the taxpayer, his agents, or servants, is generally held to supply the continuity requisite for a business even though no additional lands are bought during the period in question. Brown v. Commissioner, 5 Cir., 1944, 143 F.2d 468; Marsch v. Commissioner, 7 Cir., 1940, 110 F.2d 423; Snell v. Commissioner, 5 Cir., 1938, 97 F.2d 891. See also Commissioner v. Boeing, 9 Cir., 1939, 106 F.2d 305, certiorari denied, 308 U.S. 619, 60 S.Ct. 295, 84 L.Ed. 517; Schultz v. Commissioner, 44 B.T.A. 146. Also, where the property has been already subdivided at the time of the acquisition by the taxpayer, but he assumes further improvement obligations of the vendor, makes continual sales of lots throughout the tax year in question, and adds land to the project continually thereafter, such sustained operations also constitute a business for tax purposes, regardless of the circumstances of acquisition or whether or not the sale is for purposes of liquidation. Ehrman v. Commissioner, 9 Cir., 1941, 120 F.2d 607.

Conversely, it would seem to be the rule that lack of continuity in sales of land, either by inactivity towards the land or infrequency of sales will give the transactions which do take place the color of "isolated conveyances," and take the taxpayer out of the character of one transferring title to real estate in the "ordinary course of business." Hence, where a taxpayer forms a one man corporation for the purpose of buying, selling and renting real estate, but purchases a house and lot in his own name and sells it three years later, suffering a loss thereon, this loss is held to be the result of an individual isolated transaction and may not be used in computing the tax due from the "operation of any trade or business regularly carried on by the taxpayer." Goldberg v. Commissioner, 1929, 59

App.D.C. 147, 36 F.2d 551; Accord. Atkins v. United States, 1936, 14 F.Supp. 288, 83 Ct.Cl. 56.

In the case of 512 W. Fifty-sixth St. Corp. v. Commissioner, 2 Cir., 1945, 151 F.2d 942, where the taxpayer had held and disposed of two out of three pieces of real property owned within the last twenty years, the court found a lack of continuity of sales and denied the existence of a real estate business, stating (p. 944) in regard to the isolated character of the conveyances: "Whatever the reason, the disposition of the two hung fire for years: the first parcel for twenty years; the second, for thirteen. Indeed, the Tax Court was altogether justified in concluding that the first parcel was not held 'primarily for sale' at all. If so, the putative 'business' consisted in acquiring, and after long delay, in selling one parcel of property and losing another by foreclosure. Much more continuous activity * * * is necessary to constitute a 'business.'"

In Harriss v. Commissioner, 2 Cir., 1944, 143 F.2d 279, it was held that the taxpayer was unable to deduct the loss that he sustained from a single real estate transaction as one incurred in the course of a business. In that case the fact that over the past twenty-six years the taxpayer had acquired interests in twenty-one pieces of realty over different parts of the country, holding an average of thirteen years each, was held to show a lack of proximity of purchases and sales to amount to an acquisition in the course of business, and hence the loss was deductible only as one on a capital asset. The interest in the land in that case was purchased jointly with the taxpayer's brothers for operation as a farm which eventually proved unprofitable and was sold to one of the brothers. The court (pages 280, 281) said: "A hope, when a purchase is made, that the property acquired may at some later time be sold at a profit, will not transmute a long time investment in land held by members of a family as joint owners into a business of buying and selling real estate, or change a capital transaction into an ordinary business profit or loss."

The test which probably predominates all the others is the extent of the taxpayer's activity with or concerning the subject matter, the gain from the sale of which may be either the liquidation of a capital asset or income from a business of selling that subject matter. Extensive activity toward or with the subject matter, as a general consequence, gives the transactions an element of continuity, precludes them from being isolated, results in a substantial turnover, and colors the nature of the acquisitions and sale, and hence results in the taxpayer's being held to operate or be in a business of selling the subject matter to receive an income. The fact that the taxpayer is engaged in a profession does not prevent him from also being engaged in a business under the tax statutes. Fackler v. Commissioner, 6 Cir., 1943, 133 F.2d 509. In that case a practicing lawyer who managed and supervised a large building leased by him was held to be engaged in business so far as the building was concerned under the tax statutes.

The facts in the present case are somewhat parallel to those in the case of Phipps v. Commissioner, 2 Cir., 1931, 54 F.2d 469. In that case it would seem that at one time the taxpayers, through their agents, had been in the business of procuring, improving and platting a tract of land which they had acquired, and selling the subdivided lots. The tract in question had been the subject of extensive developmental activity, but after this, all that the owner-taxpayer did was to receive isolated offers through designated brokers, and accept those which were satisfactory. Because of this, and because no more tracts were acquired with any degree of continuity, it was held that no activity constituting a business regarding the land was in progress during the tax years in question. It would seem that the mere holding of an investment for sale with no other accompanying activity is not a business in the sense intended by the statute. Accord: Croker v. Helvering, Commissioner, 1937, 67 App.D.C. 226, 91 F.2d 299.

In passing upon the question of whether the activities of a taxpayer in connection with real estate constituted a business, the court in the case of Snell v. Commissioner, 5 Cir., 1938, 97 F.2d 891, considered that the matter of determinative importance was

the activity of the taxpayer toward his land during the years for which a refund was claimed and that activities in other years were only to be considered so far as they might give color and background to the years in question. The court, after holding that the activities of the taxpayer during these years did constitute a business, goes on to state (page 893): "If for instance he had been active in land business in 1920, but in 1923 had discontinued his business and simply sold off the remnants of his land, it might be that these remnants would not longer be held for sale in the course of his business." The court based its finding of a business in that case upon the substantial income from the taxpayer's real estate operations and the following activity (page 893): "He maintained an office in charge of a secretary, where he platted his subdivisions and fixed the prices on his lots, and settled with his brokers. He made some sales himself. * * * He was a member of state and national associations of realtors, and was looked upon locally as a very influential real estate man." The court distinguishes the fact that no additional lands were bought during the period of sale activity from those cases which treat that fact as a factor tending toward isolation of activity by saying (page 893): "The fact that he bought no additional lands during this period does not prevent his activities being a business. He merely had enough land to do a large business without buying any more. He was not re-selling land in the condition in which he bought it, but was subdividing and platting it and sometimes improving it, so as to make wild lands into town lots, thus adding the business element of development. All was done with such purpose, system and continuity as well to constitute it a business."

The line between the situation where a taxpayer is merely holding property for sale and the situation where his activities in connection with the sale of property constitutes the doing of business under the tax statutes is frequently difficult to draw. Bedell v. Commissioner, 2 Cir., 1929, 30 F.2d 622.

The case of Richards v. Commissioner, 9 Cir., 1936, 81 F.2d 369, 371, 106 A.L.R. 249, is frequently cited in connection with the question as to whether the taxpayer had gone over the line into the conducting of a real estate business. In that case, actual activity of the taxpayer either by himself or his duly appointed agent during the tax period in question, beyond the mere passive holding of lands for sale was shown. The taxpayer and his wife had executed a deed of trust to a bank, authorizing the bank to rent, sell, or convey in its discretion within stipulated limits for the best interests of the taxpayer, and appointing an agent to "subdivide and improve, and to solicit and obtain purchasers for such part of said property," and generally to have custody of the property and improvements, the taxpayer and his wife to insure and collect incidental incomes therefrom. The court found a business because of this agency relation even though the taxpayer had never personally taken part in the subdivision or the sale of the lots in the subdivision, all of which was done by the agent, and held that the profit from these sales was ordinary income and not the gain from liquidation of capital assets, notwithstanding the fact that the original purpose of the acquisition had been for truck farming. See also Pinchot v. Commissioner, 2 Cir., 1940, 113 F.2d 718; Welch v. Solomon, 9 Cir., 1938, 99 F.2d 41.

Closely allied to the case of Richards v. Commissioner, supra, as to the change in the purpose of holding, and in the activity of the taxpayer himself rather than through his agents or servants is the case of Oliver v. Commissioner, 4 Cir., 1943, 138 F.2d 910. In that case the taxpayer, on finding a growing demand for his farm land because of its proximity to Washington, D. C., during the tax years in question and at his personal expense and under his personal supervision, laid out streets, improved, platted and sold lots continuously. The court held that the property was held by the taxpayer primarily for sale to customers in the ordinary course of business and was not a capital asset. That case exemplifies a situation where the activities of the taxpayer were such as to cause him to lose the status of a mere holder of property for sale and put him over the line into the field of business.

Another case in which the activities of the taxpayer in connection with the sale of his property were such as to put him over the line into the field of business is the case of Marsch v. Commissioner, 7 Cir., 1940, 110 F.2d 423. In that case the finding of the Board of Tax Appeals that the taxpayer's sales of real estate were isolated investments, hence holding that loss deductions were not allowable as business expenses, was reversed because of the evidence of activity of the taxpayer during the tax period in carrying on real estate business for the purpose of making a profit, personally carrying on all negotiations for purchase and sale, visiting and inspecting all properties owned or contemplated purchases, insuring, paying taxes, assessments, interest on mortgages and supervising repairs to enhance sale values, in a regular recurrent manner.

Activity of investors regarding their securities is also required to meet substantially the same tests to constitute a business for tax purposes, and valuable analogies may perhaps be drawn from such cases. Miller v. Commissioner, 9 Cir., 1939, 102 F.2d 476, points out that the line of decisions regarding the handling of one's investments being a business requires either, as in the cases of Washburn v. Commissioner, 8 Cir., 1931, 51 F.2d 949, and Bedell v. Commissioner, supra, that the investor associate himself actively with the enterprises in which he is financially interested and devote a substantial portion of his time to that work as a matter of business, or, he must, if he takes no part in the management of the enterprises, make transactions with the investments themselves which are continuous, substantial, and frequent as opposed to being isolated and occasional. Hence, during the tax years in question, the taxpayer in the Miller case, who, being very aged and having no other occupation than supervising his investments, spending a few hours a day in an office he maintained for this purpose, with clerical help and advice, collecting his gain from investments and "selling bonds and purchasing stocks," was held not to have sustained the burden of showing that the extent of his "business" was so substantial, varied, continuous and regular as to constitute a business, and hence to allow the deduction of expenses incurred therein as business expenses. This case may be contrasted with the case of Kales v. Commissioner, 6 Cir., 1939, 101 F.2d 35, 122 A.L.R. 211, in which expenses such as attorney's fees were allowed as business expenses when the taxpayer showed that she managed her investments and inheritance herself, having an arrangement with a law firm to keep her books, an office there where considerable time was spent in making continuous important decisions as to dispositions of substantial amounts of securities, the taxpayer generally being personally very active in management of her estate during the tax period in question. See also Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783; United States v. Robinson, 5 Cir., 1942, 129 F.2d 297; Hutchings v. Burnet, 1932, 61 App. D.C. 109, 58 F.2d 514; Rogers v. United States, 1930, 41 F.2d 865, 70 Ct.Cl. 159; Commissioner v. Burnett, 5 Cir., 1941, 118 F.2d 659; Lederer, Commissioner v. Cadwalader, 3 Cir., 1921, 274 F. 753, 18 A.L.R. 411; Mente v. Eisner, 2 Cir., 1920, 266 F. 161, 11 A.L.R. 496, certiorari denied 254 U.S. 635, 41 S.Ct. 8, 65 L.Ed. 449; Wallace v. United States, D.C.N.Y., 1942, 50 F. Supp. 178; Chemical Bank & Trust v. United States, 1937, 21 F.Supp. 167, 85 Ct. Cl. 651; Washburn v. Commissioner, 8 Cir., 1931, 51 F.2d 949; Pope v. Commissioner, 6 Cir., 1935, 77 F.2d 599, reversing 28 B.T.A. 1255.

The test of frequency and continuity of activity is stressed in the case of Commissioner v. Boeing, 9 Cir., 1939, 106 F.2d 305. In that case the taxpayer entered a contract with logging companies to cut, deliver and sell the trees cut from his timberland, being paid on a percentage basis. As the timber was not sold to the logging companies outright, activities incident to its ultimate sale were imputed to the owner-taxpayer and, as they were continuous, frequent, regular, and substantial during the tax years in question, he was held to be in operation of a business of selling timber, and not merely liquidating a capital holding.

■ Where extensive operations in connection with the sale of real estate are shown, the fact that the taxpayer conducts such operations himself instead of entrusting them to those whose business it is to conduct such real estate selling operations is indicative of the fact that the taxpayer is engaged in the real estate business. Gruver v. Commissioner, 4 Cir., 1944, 142 F.2d 363.

The relation of the taxpayer to those having to do with the sale of the taxpayer's real estate may be such as to impute or not to impute their activities to the taxpayer. In the case of Brown v. Commissioner, 5 Cir., 1944, 143 F.2d 468, a widow inherited certain real estate which was improved, subdivided, and sold by means of extensive operations and activities. She personally did not take any active part in those operations. Those operations were handled by an agent employed by her. The court held that the activities of her agent were imputable to her and that she was as to the property involved engaged in a real estate business.

However, there are certain situations in which the activities of those interested in the sale of a taxpayer's real estate are not imputable to the taxpayer. In the present case, as heretofore noted, some of the lots were sold in connection with the operations of the Fullerton Lumber Company and the local contractor. A case having to do with a somewhat analogous situation is the case of Fahs v. Crawford, 5 Cir., 1947, 161 F.2d 315. In that case the taxpayer with his co-owners had previously platted the land acquired during the Florida land boom but had been unable to sell it either by lots or by acreage. He and his co-owners were approached by one whose occupations were that of contractor and real estate broker and developer, who desired to do the work necessary to make the lands eligible for F.H.A. loans in consideration of exclusive privileges as to buying and selling for a set discount rate. The broker carried on the entire project from improvement to sale without supervision or control of the taxpayer. Because the broker was not doing this work as an agent of the taxpayer, but rather in pursuit of his own business to attain his own ends, only incidentally liquidating the asset of the taxpayer, his activity was not imputed to the taxpayer and the rate assessed was that of a capital asset sale gain.

The tax statute in question contains the words, "property held by the taxpayer * * * primarily for sale * * * in the ordinary course of his trade or business." In the case of Richards v. Commissioner, supra, the taxpayer contended that it was the intention of Congress to exclude from the operation of the statute profits realized from the sale of real estate where that real estate was not originally acquired for purposes of sale. The court overruled that contention stating (page 373 of 81 F.2d): "To give effect in the act to the presumed intention, we would have to substitute for the word 'held' as used in the act, the word 'purchased.' This we are unable to do, for Congress could easily have narrowed this third class of property excluded, and since it did not do so, we must assume that the intention of Congress as carried out was not to narrow this third class of property excluded, but was to include in the comprehensive word 'held,' property which might or might not have been purchased primarily for the purpose of resale."

■■ In accord with the above interpretation, it has frequently been held that the fact that the real estate involved was not originally acquired for the purpose of sale does not prevent the taxpayer's activities in connection with the sale of it from constituting a business. Oliver v. Commissioner, supra (acquired for farming purposes); Brown v. Commissioner, supra (acquired by inheritance). However, the reasons for and circumstances surrounding the original acquisition do lend color to the entire transaction and aid in the interpretation of later conduct. Where the original acquisition is involuntary in nature such as when the real estate involved is acquired as the result of a mortgage foreclosure, that fact is of significance. While it would, of course, be possible for the owners of involuntarily acquired real estate to go into business to effect its resale, ordinarily that is rarely the case. Thompson Lumber Co. v. Commissioner, 43 B.T.A. 726; Kanawha

Valley Bank v. Commissioner, 4 T.C. 252. Conversely, where the property was originally acquired for purposes of resale at a profit, the resale of it by the taxpayer does not of itself give the taxpayer the status of being in the real estate business. Phipps v. Commissioner, supra. In that case Judge Learned Hand states (page 471 of 54 F.2d): "While the purchases were made with the hope of profitable sales at some future time they do not seem to have been sufficiently frequent, or the activities sufficiently engrossing, to give the taxpayers the vocation of real estate dealers * * * in 1924 or 1925." See also Harriss v. Commissioner, 2 Cir., 1944, 143 F.2d 279; Deering v. Blair, 1928, 57 App.D.C. 367, 23 F.2d 975.

 In the present case the plaintiff did not take over the tract to protect a personal investment previously made, and he was not under any legal obligation to purchase it, so that the original acquisition could not be classed as an involuntary acquisition. On the other hand, the tract was not acquired by him because of a desire to profit from the sale or to speculate in real estate or to engage in the real estate business. It is apparent that the tract was acquired by him out of a sense of responsibility to the trust, to avoid a loss to the trust, and to relieve the trust of an undesirable asset. At the time the plaintiff acquired the tract in his own right, the conditions and circumstances were such that it appeared reasonably probable that he himself would sustain a loss by so doing, and negative any idea that he acquired the tract with the view of making a profit by reselling or by speculating in real estate, or by engaging in the real estate business. As previously noted, these circumstances surrounding the original acquisition by the plaintiff are of significance in giving color and background to the tax periods now under consideration.

 It is apparent that some of the lots in the tract were sold as a result of the activities of the Fullerton Lumber Company and the local contractor. Because of the nature of their businesses, and because of their relation to the lots, their activities in connection with the sale of lots cannot be imputed to the plaintiff. It is also of some significance that the plaintiff for fifteen years or more has purchased no real estate for purposes of resale and that the tract in question was the only land he subdivided. There is also lacking the feature of acquiring any additional land for subdividing which was present in some of the cases to which reference has been made.

In the present case only thirty-six lots were platted, two of which had been sold prior to the platting. Four and one-half lots are still unsold. The tax years involved in the present case are 1941 and 1943. During those periods only eight lots were sold, seven in 1941 and one in 1943. No sales were made in 1942. Thus, during a three year period only eight lots were sold by the plaintiff, even were it to be assumed that none were sold as the result of the activities of the Fullerton Lumber Company and local contractor. The cases which have held a taxpayer to be engaged in business in connection with the sale of lots were cases where the number of lots involved and the income from the sales was a great many times larger than the lots and amounts involved in the present case. Snell v. Commissioner, supra; Richards v. Commissioner, supra; Ehrman v. Commissioner, supra; Oliver v. Commissioner, supra. The sales of lots during the tax years in question are so lacking in regularity, continuity, and substance as not to constitute a business as contemplated by the statute in question.

 The fact that a taxpayer who wishes to sell real estate advertises the same for sale in a local newspaper is in and of itself insufficient to place him in the category of one being in the real estate business. The matter of advertising is only one of a large number of facts and circumstances to be considered in determining the question of whether a taxpayer is engaged in business. In the present case the advertising was not instituted at the request of the plaintiff. His participation was solicited by the newspaper as a part of a booster campaign. It would seem that if newspaper advertising is contemplated as an important part of the business of selling lots that the one so engaged would himself institute the advertising.

The sign on the tract advertising the lots for sale was not placed on the tract until some years after the tax years in question and was then placed in Broadlawns Third Addition which thereafter was conveyed to the plaintiff's children before any lots in it were sold. It is also of significance that the plaintiff took no time off from his usual working day as a lawyer in connection with the tract and that the amount of the profits realized by the plaintiff from the sale of the lands in question constituted only a relatively small part of his income.

Where a taxpayer owns a business building or residence which is unsalable because of its condition and the taxpayer does what is necessary to place it in salable condition, the activity of the taxpayer in so doing would not of itself give him the status of being in the real estate business. In the present case the plaintiff found himself the owner of a tract which was unsalable in its unplatted and unimproved condition. In order to place the property in a salable state he platted and improved the tract. Such improvement only constituted the placing of the property in salable condition and did not give him the status of one engaged in the real estate business. The court in the case of Fahs v. Crawford, supra, in dealing with the activities of a taxpayer in improving a tract of land so as to render it more marketable stated (page 317, of 161 F.2d): "In effect, what the taxpayer was doing was to render more attractive a capital asset already owned, in order to sell it, in much the same way as an owner would paint and redecorate an old house, and landscape the grounds, in order that his broker could more readily dispose of it for him. These activities were but preliminaries." It should further be noted that whatever the activities of the plaintiff in that regard, that they had ceased prior to the tax years in question.

It is the holding of the court that the lots sold by the plaintiff during the tax years in question were not held by him primarily for sale in the ordinary course of business but rather that the same constituted the sale of a capital asset, and the plaintiff is entitled to a recovery for the amount of refund claimed. Judgment will be entered accordingly.