**W. J. ALLISON, Ruth Allison, James S. Graham, Doris H. Graham, Elmer L. Williams, and Margaret Williams, Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. No. 5411.**

United States District Court
D. Minnesota, Fourth Division.

Jan. 15, 1957.

Roger M. Stuart, Jr., Atty., Dept. of Justice, Washington, D. C., appeared as attorney for the defendant in support of said motion.

Hayner N. Larson and Jack D. Gage, Minneapolis, Minn., appeared as attorney for the plaintiffs in opposition thereto.

DONOVAN, District Judge.

This action to recover income taxes paid for the years 1946, 1947 and 1948, in the sum of $16,897.02, was tried before this Court and a jury. Plaintiffs had a verdict. The matter is now before the Court on defendant's motion for judgment, or a new trial.

It appears from the evidence that plaintiffs W. J. Allison, James S. Graham and Elmer L. Williams, herein referred to as plaintiffs, were full-time officers or employees of Allison-Williams Company, a corporation dealing in the purchase and sale of securities, consisting mostly of municipal bonds.

Blair E. Rice and Elmer D. Stemsrud were familiar with farm values in South Dakota by reason of experience gained by employment in the Farm Loan Department of the Prudential Insurance Company in Minneapolis, Minnesota. Learning that the Southern Minnesota Land Bank receiver had 31 farms in Beadle and Hand Counties, South Dakota, for disposition, Rice and Stemsrud contacted plaintiffs in July, 1945, and as a result an agreement dated July 24, 1945, was executed by Allison, Graham, Williams, Rice and Stemsrud, wherein and whereby they agreed "to purchase the said * * * [farms], to operate and to thereafter dispose of the said * * * [farms] by sale or other means * * * [and said agreement was to terminate] when and if all of the said * * * [farms] have been sold or otherwise disposed of * * * [and] if such termination has not been effected before May 1, 1947, the said * * * [farms] and other assets then remaining shall then and thereupon be immediately sold at such price as may be determined by said Stemsrud and said Allison, or shall by them be divided

among the parties hereto at such valuations as they may determine * * *."

It was the understanding of the signatories that they were to share the profits jointly and each was to contribute 20% of any possible loss sustained.

Plaintiffs, except for several field trips to South Dakota, devoted all of their working time to their brokerage firm, and to Stemsrud was left the major responsibility of caring for, renting and negotiating the sale of the farms. For this purpose they designated one C. M. Kelly, an office employee of Allison Company, to keep the accounts, open a bank account and take title in her name. Business was conducted under the name of C. M. Kelly Properties."

The farms were under lease for agricultural purposes until sold. They were all sold between September 7, 1945, and May 7, 1948.

Plaintiffs executed individual income tax returns and timely annual information returns with respect to the distributive shares of profit or loss.[1] The taxes for which the plaintiffs have sued were assessed by the Commissioner of Internal Revenue and have been paid by the plaintiffs. They have filed claims for refund of such taxes. The Commis-

sioner of Internal Revenue determined that all sales of real estate made by plaintiffs during the years 1946, 1947 and 1948, were sales of property held by them for sale to customers in the ordinary course of business and that, thus, the gains or profits on such sales were ordinary income and were taxable as such. The plaintiffs contend that these sales were sales of capital assets and that the gains or profits were taxable as capital gains or at a lower rate than that applying to ordinary income.

The United States contends that the farms were held by plaintiffs and their associates in the venture, Blair E. Rice and Elmer D. Stemsrud, primarily for sale to customers in the ordinary course of their trade or business. If the farms were in fact so held, capital gains treatment under either section 117(a) or 117(j) would be specifically barred and the profits would be taxable as ordinary income.

The sole question of fact and law was and is this: Were the farms "primarily for sale to customers in the ordinary course of * * * trade and business?"

■ The fact that plaintiffs filed information returns under the name of

---

1. The statute involved is the Internal Revenue Code of 1939:

"§ 117. Capital gains and losses

"(a) Definitions. As used in this chapter—

"(1) [As amended by Section 115(b) of the Revenue Act of 1941, c. 412, 55 Stat. 687, and Section 151(a) of the Revenue Act of 1942, c. 619, 56 Stat. 798.] Capital assets. The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l), * * * or real property used in the trade or business of the taxpayer;

* * * * *

"(j) [As added by Section 151(b), of the Revenue Act of 1942, supra.] Gains and losses from involuntary conversion and from the sale or exchange of certain property used in the trade or business.

"(1) Definition of property used in the trade or business. For the purposes of this subsection, the term 'property used in the trade or business' means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. * * *"
[26 U.S.C.1952 Ed., Sec. 117.]

C. M. Kelly Properties, on forms provided by the Government for use by partnerships[2] is not conclusively determinative that the farms in question were knowingly held for sale as business properties, rather than as capital assets.

Among the recognized factual tests to be considered and applied by the jury in this type of case are, the continuity of the sales and related activity during the period in question; the frequency of sales as opposed to isolated transactions; the activity of the seller or those acting under his instructions or in his behalf, or the time, labor and effort given to effect the transaction such as by improvement or advertisement to attract purchasers; the extent or substantiality of the transaction and the reason for, purpose or nature of the acquisition of the subject matter. No one fact is conclusive. If, after applying the tests named, the triers of the facts concluded that the farms were acquired for sale only, as opposed to the theory of investment, then this would be evidence that plaintiffs had ventured into the realm of selling real estate. If, on the other hand, the farms were acquired for long-term investment purposes, it would be evidence opposing the theory of holding real estate for sale to customers.

The record supports the conclusion, obviously arrived at by the jury, that the farms were purchased by plaintiffs as an investment, rather than for sale to customers in the ordinary course of business.

The mere selling of investment assets at intermittent intervals alone, is not engaging in a trade or business. The purchase of property with the thought of reselling it at a profit does not, standing alone, detract from its character as a nonbusiness investment.

The occasional purchase and resale of the farms in the instant case did not make plaintiffs "dealers in real estate" for income tax purposes.[3] The Court holds that plaintiffs did not acquire the farms and sell them during the tax years in question in the ordinary course of business.

The motion of defendant is denied.

---

2. Defendant cites Hammel v. Feigh, 143 Minn. 115, 118, 173 N.W. 570, in support of its claim that this was a partnership or joint venture.

3. Boomhower v. United States, D.C., 74 F. Supp. 997, 1002, 1003, 1004, and cases cited.