OPINION. Van Eossan, Judge: Petitioners, as a partnership, engaged in both farming and the real estate business. In January 1953 the partnership sold a tract of land known as the Lawrence 80 acres. Respondent determined that the gain from the sale of this land was ordinary income. Petitioners contend that the gain was capital in nature. The question turns on whether or not the partnership held the Lawrence 80 acres primarily for sale to customers in the ordinary course of business.[1] Since this question is always one of fact, the decided cases, though of help, are not controlling. The cases have, however, established several criteria to assist in making a determination. Among the factors to be considered are the reasons for, purpose or nature of, the acquisition of the property; the activities of the seller to attract purchasers, such as improvements or advertisements; and the frequency and continuity of sales or sales-related activity. Boomhower v. United States, 74 F. Supp. 997 (1947). After careful consideration of all the evidence, we have made the ultimate finding that the Lawrence 80 acres was not held primarily for sale to customers in the ordinary course of business. Respondent admits in his answer that the business activities of the partnership include farming, land brokerage, development and sale of residential building sites, and construction of residences. As of December 31, 1952, petitioners owned and operated approximately 1,640 acres of farmland and had total farm assets in the amount of $271,381.82. They had approximately 70 head of cattle and 1,000 hogs. Clearly, they were both dealers and investors in real estate. D. L. Phillips, 24 T.C. 435 (1955) ; Walter B. Crabtree, 20 T.C. 841 (1953); Nelson A. Farry, 13 T.C. 8 (1949). We, therefore, do not consider as controlling the fact that petitioners subdivided other land in the vicinity of the Lawrence tract. Both of the petitioners testified unequivocally that they purchased the Lawrence 80 acres for farm purposes. They further testified that they needed additional land to grow feed for their livestock and that the Lawrence tract was mostly tillable and was sufficiently near the farmland they already owned to permit convenient management with the same organization and farm tools. The record strongly supports petitioners’ testimony. The Lawrence 80 acres was not the type of land the partnership usually subdivided. It was fairly level and had few trees. Petitioners tried to place their subdivisions in areas with trees or rolling ground, suitable for $25,000 homes. After acquiring the Lawrence tract, petitioners proceeded to make improvements which increased its suitability for farming. The farm was generally cleaned up, and the buildings were repaired. The land was subsoiled and disked, a swampy area was drained, some large rocks were removed from the fence rows, and the driveway was graded. No streets were laid out. The land was never advertised for sale by the partnership, and no signs or markers were placed on the property stating that it was for sale or that it was owned by the partnership. Negotiations between the ABC Construction Corporation and petitioners culminating in the sale of the Lawrence tract to ABC in January 1953 resulted not from promotional efforts on the part of petitioners, but from an inquiry pressed by a realty company engaged by ABC. At the time the Lawrence 80 acres was sold to ABC it was anticipated that the town of Lawrence would build a sewer, accessible to the land. However, there is no evidence that such a sewer was contemplated at the time petitioners purchased the tract. Nor 'do we consider it significant that the Lawrence 80 acres was originally carried in the partnership general ledger among accounts containing land held for subdivision. Both petitioners testified that they took no part in the partnership bookkeeping. Furthermore, on October 31, 1952, the tract was transferred to the farmland account with the explanatory notation that it had been erroneously charged as land held for subdivision. This action was apparently taken in good faith. We are of the opinion and have held as a fact that the Lawrence 80 acres was acquired and held primarily for farming purposes and not for sale to customers in the ordinary course of business. They are, therefore, entitled to capital gains treatment on the proceeds of its sale. Respondent determined additions to petitioners’ income tax for the calendar year 1953 under section 294(d) (2) of the Internal Revenue Code of 1939. Petitioners alleged error as to this determination. However, no evidence was submitted in support of petitioners’ allegation. In the absence of evidence to the contrary, respondent’s determination must be sustained, subject to recomputation reflecting the decision of this Court upon the principal issue. Decisions will be entered under Rule 50. SBC. 117. CAPITAL GAINS AND LOSSES. (j) Gains and Losses From Involuntary Conversion and Prom the Sale or Exchange op Certain Property used in the Trade or Business.— (1) Definition of property used in the trade or business. — Por the purposes of this subsection, the term “property used in the trade or business” means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * * (2) General rule. — If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales op exchanges of capital assets. * * *