PETER A. MILLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31389.   Promulgated July 15, 1930.

*R. A. Littleton, Esq.*, and *James A. Councilor, C. P. A.*, for the petitioner.
*John D. Kiley, Esq.*, for the respondent.

**OPINION.**

MARQUETTE: In July, 1922, the petitioner purchased property known as the Larrowe Apartments. He took possession and operated the building as an apartment and business property until December 14, 1924, when he sold it at a net profit of $75,000, upon deferred payments. The sole question now before us is whether the gain thus realized is taxable as profit, or as a capital net gain.

Section 208 (a) and (b) of the Revenue Acts of 1924 and 1926, as far as applicable here, provides:

[SEC. 208. (a)] (1) The term "capital gain" means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921;

\*     \*     \*     \*     \*     \*     \*

(8) The term "capital assets" means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. \*  \*  \*

\*     \*     \*     \*     \*     \*     \*

(b) In the case of any taxpayer (other than a corporation) who for any taxable year derives a capital net gain, there shall (at the election of the taxpayer) be levied, collected and paid, in lieu of the taxes imposed by sections 210 and 211 of this title, a tax determined as follows:

A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner provided in sections 210 and 211, and the total tax shall be this amount plus 12½ per centum of the capital net gain.

It is apparent, from a reading of the above sections of the statute, that if the petitioner was engaged in the business of buying and selling real estate and the Larrowe Apartments was part of his stock in trade, or if he held the property primarily for sale in the course of his trade or business, he can not have his profits taxed as capital net gain.

The record shows that the petitioner began the practice of law in Detroit in 1917; that in the year following he began to make loans on real estate, acting as the agent for a firm in Ohio having money to lend; and that he continued his law practice and loan brokerage business until July or August, 1923, at which time he turned his attention and energies to the acquisition and leasing of hotels, it being his purpose to acquire a chain of them and from the rentals thereof to obtain a steady income. The record also shows that in July, 1922, the petitioner bought the Larrowe property, and his testimony is that he bought it for an investment. That testimony is not contradicted, except perhaps by inference from the following facts: During 1924 the petitioner acquired and sold equities in several pieces of real estate; he was practically the sole stockholder, and was the president, of Peter A. Miller & Co., whose business was building and selling houses; he was president of the Capital Realty Investment Co., organized to write insurance and do a real estate brokerage business; petitioner's income-tax returns for 1924 and 1925 gave his occupation as " Real Estate," and in 1925 he bought and sold a land contract for a parcel of real estate. But the evidence also shows that the real estate equities acquired and sold by the petitioner in 1924 were received by him as part payment for the Larrowe Apart-

ments, the property now in question; that the corporation, Peter A. Miller & Co., built a few houses and sold them, but had no other real estate transactions; that the Capital Realty Investment Co. never owned or sold any real property, was not successful, and ceased its business activities in the insurance field in about ninety days; that the petitioner's income-tax returns were made out by his auditor; and that the real estate contract acquired and sold in 1925 was bought by the petitioner at the request of the firm for which he had loaned money for several years, that the petitioner never had possession of the property, and that he discounted it and sold the land contract at once, practically as a part of the transaction by which he acquired it. In the light of all the evidence we must conclude that the petitioner was not engaged in the business of buying and selling real estate in the years 1922 to 1925, inclusive.

The respondent relies upon *John M. Welch, Sr.*, 19 B. T. A. 394, as being decisive of the issue in the present proceeding. The question in the *Welch* case was whether real estate owned and sold constituted " property held by the taxpayer primarily for sale in the course of his business," and it was there said:

> We think that it means that where a person is engaged in business and in the conduct of that business sells property which is held for sale in the business, such person may not claim the benefit of the capital gains provision of the statute. The question here is whether the petitioner was engaged in a real estate business during the years 1924, 1925, and 1926. We think that he was. He was a member of a partnership which was actively engaged in a real estate business and which was selling and endeavoring to sell the property held by the petitioner. Clearly, he was engaged in the real estate business in which the partnership was engaged. But the evidence shows further that the petitioner had over a series of years subdivided different tracts of land and held the lots in such subdivisions for sale. We think, indeed, that as an individual the petitioner was engaged within the meaning of the statute in a real estate business.

However, that case discloses that Welch had for many years devoted his attention and energy to buying and selling real estate and acquiring and subdividing tracts of land and holding the lots in such subdivisions for sale, and had advertised his partnership as being in the real estate business, etc. That case and the one now under consideration are based upon very different conditions of fact and that difference precludes us from applying the *Welch* case here.

The case of *George H. Peck*, 19 B. T. A. 345, bears a closer analogy to the present proceeding. There, for many years, the taxpayer had been the sole stockholder of a corporation engaged in the real estate business. He became ill and blind in 1919 and wished to wind up the company and convert his property into other forms. He therefore caused all the real estate then held by the company to be transferred to himself, dissolved the corporation and proceeded to sell the land as quickly and expeditiously as possible. Some of it was not sold

until 1923. Our holding in that case was that the land conveyed by the company to the taxpayer and held by him for more than two years, constituted capital assets and the gains derived from the sale thereof in 1923 were taxable as capital net gain.

We are of opinion that the petitioner bought the Larrowe Apartments as an investment and held them as such for more than two years, and that they constituted a capital asset within the meaning of section 208 (a)(8) of the Revenue Act of 1924. The profits derived from the sale in 1924 are therefore subject to taxation under section 208 (b) of the Revenue Act of 1924.

*Judgment will be entered under Rule 50.*