**OLDHAM LUMBER CO. v. DUNLAP, Acting Collector of Internal Revenue.**

Civil Action No. 3003.

United States District Court

N. D. Texas.

Dallas Division.

Oct. 29, 1948.

Robertson, Jackson, Payne & Lancaster, by Sam Winstead, all of Dallas, Tex., for plaintiff.

Wm. P. Fonville, Asst. U. S. Atty., of Dallas, Tex., for defendant.

ATWELL, District Judge.

Well, the difference between you gentlemen is largely based upon a word which is not underscored in the statute—one would italicize it and the other would just leave it as it is.

What Congress had in mind in 26 U.S.C.A. § 117 presents a difficulty in unraveling the respective positions taken by the income tax authorities and the citizen with reference to whether a transaction was capital gain or ordinary income. One goes back as far as the parent which gave birth to the corporation to determine what the charter issuing sovereignty said could be done under the charter.

We have an interesting case, which has become the law all over the nation, known as the Long Bell Lumber Company. That permits such a latitude—reasonably, I think—with reference to what a chartered institution may engage in under its charter without running the risk of having that charter taken away from it by the issuing authorities. Ultra vires may be pleaded by certain parties, but not by all parties. We cannot, with justice, I think, claim that what the Oldham Lumber Company did was ultra vires. It was in the ordinary course of business. The witnesses who have taken the stand do not run counter to the written stipulation of the parties, which was quite agreeable to the Court, and speaks well of the talent and learning of each side. Those authorities of the corporation testify that these lots were acquired for the purpose of

assisting them in the sale of lumber, such lumber to be purchased from them by those who would erect houses on them, and who would buy the lots from them. It is a close question, but I doubt, gentlemen, that those lots were capital assets within the meaning of the income tax law. I think what was done there, and what was hoped to be done there, was largely delayed, to say the least of it, by the failure of the municipality to run connecting water facilities for those who might be interested in the purchase of the lots. The Lumber Company went so far as to build its own laterals upon the lots so as to connect with those same water facilities when the city should place the main lines out there. It was a larger venture than the Lumber Company had engaged in before, apparently, in that particular respect, but the testimony of the witnesses shows that the business of Oldham Lumber Company has continued to increase with the years, so that it has reached a large volume in the last year or so, larger than ever before, perhaps due to the perspicuity and vision of those who are in command.

I find, gentlemen, that as a fact, and in addition to what I have already said, that these lots acquired in the twenties and sold in 1944 at a loss, as stipulated by the parties, were not capital assets, but were losses that are deductible under the income tax statute.