**SHEARER et al. v. SMYTH.**
**No. 30887.**

United States District Court,
N. D. California, S. D.

Oct. 22, 1953.

Charles J. Leighton, Jr., San Francisco, Cal., Willard C. Mills, Washington, D. C., for plaintiffs.

Lloyd H. Burke, U. S. Atty., George A. Blackstone, Asst. U. S. Atty., San Francisco, Cal., for defendant.

HARRIS, District Judge.

Plaintiffs, husband and wife, seek to recover money paid to defendant for income taxes due in 1946. The issue of the case arises out of a real estate transaction. Plaintiffs acquired a 19½ acre tract of unimproved land in Atherton in 1939, in exchange for their Palo Alto residence. Commencing in 1945 and concluding in 1946, plaintiffs sold the unimproved Atherton property. Plaintiffs contend that the profits realized from the sale of the land constitute capital gains under 26 U.S.C.A. § 117(a) (1) and (j) (1). Defendant in turn contends that the sale was primarily to customers in the ordinary course of trade or business and taxable as regular income.

The undisputed facts are as follows:

Plaintiff Joseph Shearer normally engages in real estate business as an agent and also devotes part of his time to farming. His wife was also a real es-

tate agent. They purchased the Atherton property in 1939 for three purposes: (a) For use as a residence; (b) for truck farming; (c) as a long term investment. Because of an ordinance passed by the City of Atherton, the land was limited in its use to orchard, pasturing and grazing. Thus plaintiffs were precluded from engaging in truck farming. Until 1944, they leased the land for the growing of hay on a share-crop arrangement. Their share of receipts constituted approximately one-third of the amount imposed by the Assessor for taxes. Thus they were losing money on the property.

Plaintiffs never built a residence for themselves on the property. Plaintiff Georgia Shearer became ill with pneumonia and was advised to live in the drier climate of Los Altos as opposed to the land owned by plaintiffs in Atherton.

In 1944 plaintiffs listed the property for sale with two San Francisco brokers. The only offer they received was for an exchange for an office building, appraised at somewhat less than the price they had paid for the Atherton property. Approximately one year later, when plaintiffs learned that the City of Atherton planned to increase the minimum size of subdivision lots from 28,500 square feet to one acre, they decided to undertake a prompt subdivision of their property.

In 1945 they laid out a tract of 25 lots. This necessitated preparation of a subdivision map, instruction of a surveyor, arrangement for street paving, sewer installation, water lines and elec-tricity. Plaintiffs erected "for sale" signs on the tract and obtained permits for smaller signs. They printed sales maps for use by plaintiff Joseph Shearer and other brokers for the sale of the lots. In July 1945 advertisements were placed in four newspapers for lot sales. The total expenses for preparing the subdivision and consummating the sales of the lots were approximately $25,000. On such sum, together with the original investment of approximately $21,000, plaintiffs realized a gain of more than $34,000.

When plaintiffs prepared their returns for 1946 the Commissioner of Internal Revenue informed them that he would disallow capital gain treatment for such income. Plaintiffs desired to avoid interest payments in the event of a deficiency assessment and accordingly prepared the returns by treating such gain as ordinary income.

Although plaintiff Joseph Shearer testified he spent about half of his time operating his cattle ranch, defendant notes that he failed to report any income from such source in 1946. Joseph Shearer testified he spent four or five percent of his time in connection with the subdivision in 1946. The record is barren as to the time he devoted in 1945 when most of the work was undertaken.

In order to ascertain whether the profit realized from the sale of the 25 lots was ordinary income or capital gain, as contended for by plaintiffs, it is necessary to analyze the applicable sections of the Internal Revenue Code, 26 U.S. C.A. § 117(a) (1) and (j) (1).[1]

---

1. "§ 117. *Capital gains and losses*
   "(a) Definitions. As used in this chapter—
   "(1) Capital assets. The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * * or real property used in the trade or business of the taxpayer;
   * * * * * * *
   "(j) Gains and losses from * * *

sale or exchange of certain property used in the trade or business
   "(1) Definition of property used in the trade or business. For the purposes of this subsection, the term 'property used in the trade or business' * * * held for more than 6 months, which is not * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.
   * * *
   "(2) General rule. If, during the taxable year, the recognized gains upon sales or exchanges of property used in the

■ As stated in Austin v. United States, D.C., 116 F.Supp. 283: "No inflexible formula has been devised which will uniformly give a correct result. Each fact situation must stand on its own bottom." The tests applied by the court in the particular case in ascertaining whether property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business were as follows: (1) Continuity of sales, and sales-related activity over an extended period of time; (2) The efforts and activities of the taxpayer in improving, advertising, and enhancing the marketability of the property; (3) The substantiality of the sales; and (4) The purpose or motive of the taxpayer in acquiring and disposing of the property.

The disposition of the Atherton tract by plaintiffs was of such size and called for such substantial investment and devotion of time as to place it outside the scope of a capital transaction. Defendant relies upon three cases in which real estate developments were held to be sales of lots to customers in the ordinary course of the trade or business. Palos Verdes v. United States, 9 Cir., 201 F. 2d 256, Ehrman v. Commissioner, 9 Cir., 120 F.2d 607, and Richards v. Commissioner, 81 F.2d 369, 106 A.L.R. 249.

All held that the subdivision operation constituted a disposition of property held primarily for sale in the course of the taxpayer's trade or business. In these cases the property had not been purchased by the taxpayer for purposes of sale. Yet the court held that the reason for the acquisition would not in itself control the court's determination where the land involved was *substantial*, the investments required for subdivision were large and the profits were also sizeable. Defendant contends that the factual situation in the instant case is governed by the law enunciated by the Ninth Circuit Court of Appeals in the Palos Verdes case, supra.

Plaintiff's property was losing money because of the tax burden and the minimum income realized from the sale of hay. Through the investment of over $24,000 and a part of plaintiff Joseph Shearer's time and energy, a successful sales campaign was conducted and the venture was concluded by enabling plaintiffs to realize more than $34,000 in profits. In order to avoid a loss by liquidating their original investment as a single parcel, plaintiffs engaged in the business of disposing of land at a profit.

The Oldham Lumber case (Oldham Lumber Co. v. Dunlap, D.C., 83 F.Supp. 336) cited by plaintiff is distinguishable in that the lots which were sold had been platted and improved and only $500 for sewer laterals was expended in order to dispose of property which the lumber company owner could not itself handle as a subdivision. In like manner, Three States Lumber Co. v. Commissioner, 7 Cir., 158 F.2d 61 is distinguishable. In that case the land was sold in minimum parcels of 10 acres. No improvements were made and a minimum sales campaign was undertaken.

■ Plaintiffs' Atherton property was not so large as that involved in the several cases cited by the government; the subdivision task was not so onerous and the profits realized were not so great. On the other hand the disposition of plaintiffs' property called for the devotion of money and time on the part of plaintiffs far in excess of that demanded of the owners in the cases relied upon by plaintiffs. The sale was in the regular course of business and was not such a transaction as would justify a capital gain.

Judgment will be entered in favor of defendant on preparation of findings of fact and conclusions of law.

trade or business * * * exceed the recognized losses from such sales [and] exchanges, * * * such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months."