JUAN G. NOLLA, Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY, Defendant and Appellee.

No. 10778.   Argued November 4, 1953.—Decided June 24, 1954.

*F. M. Susoni, Jr.,* for appellant.   *José Trías Monge, Attorney General,* and *Juan Pedrosa, Jr., Assistant Attorney General,* for appellee.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

Section 5 (*f*) of the Income Tax Act, as amended by Act No. 150, Laws of Puerto Rico, 1948, provides that income tax shall be paid on only 25% of the income resulting from the sale by an individual of real estate held by him as the owner thereof for more than one year.   However, § 5 (*f*) also pro-

vides that this reduced rate shall not apply to sales by an individual of ". . . real estate held as owner primarily for the sale to clients in the ordinary course of his industry or business . . .". The question here is whether, in making certain sales of real estate, the taxpayer was in the business of selling land and must therefore pay income taxes on 100% rather than on 25% of the profits from such sales.

For a number of years, Juan G. Nolla has been engaged in several businesses. He sells household appliances, he is a farmer, and he is in charge of the customs office in Arecibo. In 1935 he acquired at a judicial sale a 42-acre tract of land near Arecibo which he used for the growing of sugar cane for a number of years. Thereafter, as a result of the construction of a new road, 4 acres were separated from the rest of the said farm, bordering on the road for approximately 150 meters. The 4 acres were no longer useful for agricultural purposes because of the construction of the road. Accordingly, in 1948 the plaintiff proceeded to urbanize and subdivide the 4 acres in order to sell lots. He fulfilled the requirements of the Planning Board, spending approximately $69,000 therefor, and making a number of lots amounting to 14,076.74 square meters, which he offered for sale in the form of individual lots.

During 1949 Nolla sold one lot and another was condemned by the Aqueduct and Sewer Authority.[1] In reporting the income from the sale of these two lots in his return for 1949, Nolla paid a tax on 25% thereof. The Treasurer notified him with a deficiency on the ground that he should have paid a tax on 100% of the profits from these sales. Nolla sued in the former Tax Court to set aside this deficiency. After a trial on the merits, the complaint was dis-

---

[1] Neither party contends that the disposition by condemnation rather than by sale of one of the lots makes any difference under the circumstances of this case. After the condemnation suit was filed, the property in question was sold by the taxpayer to the Authority by a deed which provided a purchase price higher than the estimate made by the Authority in the condemnation suit.

missed by the Superior Court, to which all cases pending in the former Tax Court had been transferred. The case is here on appeal by the taxpayer from the judgment of the Superior Court.

The taxpayer argues that he would be required to pay a tax on 100% rather than on 25% of the profits from the sale of real estate only if he had *purchased* the property primarily for purpose of resale. This contention was specifically rejected in *Richards* v. *Commissioner of Internal Revenue*, 81 F.2d 369, 372–3 (C.A. 9, 1936). In the *Richards* case the taxpayer had as here originally purchased the property for agricultural purposes. Thereafter, as in the present case, due to changed conditions, he subdivided the land and sold lots for purposes of urbanization. He laid out the lots and assumed the burden of furnishing gas, electricity and water to the lots. The court held (1) that the test was whether the property was "held" for resale, not whether it was originally purchased for resale, and (2) that the activities of the taxpayer brought him within the exception and required payment of the tax at the full rate. To the same effect, *Brown* v. *Commissioner of Internal Revenue*, 143 F.2d 468 (C.A. 5, 1944); *Boomhower* v. *United States*, 74 F. Supp. 997, 1007 (Dist. Ct., Iowa, 1947).

There can be no question that in this case the property was being held for ". . . sale to clients . . ." The subdivision of the land into lots to suit the needs of individual purchasers and the subsequent sales thereof were evidence of this purpose. *Gruver* v. *Commissioner of Internal Revenue*, 142 F.2d 363, 367 (C.A. 4, 1944), and cases cited; Fink, *"Dealing" in Real Estate*, 2 Tax L. Rev. 111, 114. Indeed, the taxpayer in this case does not argue the contrary. [2]

_____
[2] In some cases the problem arises as to whether the taxpayer is holding the property *primarily* for resale or for some other purpose. See Fink, *supra*, 113, and cases cited; *Rollingwood Corp.* v. *Commissioner of Internal Revenue*, 190 F. 2d 263 (C.A. 9, 1951); *United States* v. *Bennett*, 186 F. 2d 407 (C.A. 5, 1951); *Comment*, 39 Calif. L. Rev. 528, 532. The taxpayer does not make that argument here. He was unquestionably subdividing in order to *sell* lots.

■■ The most important, and the most difficult, fact to determine is whether the sale was made "in the ordinary course of . . . [the taxpayer's] industry or business . . ." This does not mean that dealing in real estate must be the only, or even the principal, business of the taxpayer. On the contrary, the latter as here may be in other businesses to which he devotes more time and money than to his real estate transactions and still come within the rule that his sales were in the ordinary course of his business. *Williamson v. Commissioner of Internal Revenue*, 201 F.2d 564 (C.A. 4, 1953); *Commissioner of Internal Revenue v. Boeing*, 106 F.2d 305 (C.A. 9, 1939); *Snell v. Commissioner of Internal Revenue*, 97 F.2d 891 (C.A. 5, 1938); *Calvelli v. Commissioner*, 43 B.T.A. 6 (1940).[3] In determining whether the sales come within the latter category, an important factor is the frequency and continuity of such transactions. *Rollingwood Corp. v. Commissioner of Internal Revenue*, supra; *Commissioner of Internal Revenue v. Boeing*, supra, 309, cert. denied 308 U. S. 619; 3 Mertens, *Law of Federal Income Taxation*, § 22.08, pp. 699–701, footnote 70, and cases cited in 1953 Suppl., pp. 280–90. If a large tract of land is subdivided and lots are systematically and regularly sold in substantial number, the taxpayer is clearly engaged in the business of selling real estate. *Snell v. Commissioner of Internal Revenue*, supra. On the other hand, an isolated or casual realty sale is treated as a capital transaction. *512 W. Fifty-Sixth St. Corp. v. Commissioner of Internal Revenue*, 151 F.2d 942 (C.A. 2, 1945); *Miller v. Commissioner*, 20 B.T.A. 230 (1930). The difficult cases are those which fall somewhere

---

[3] Indeed, the taxpayer need not devote any of his time to the business. If he acts through agents or independent contractors, he is still considered as in the business of selling real estate, provided the other requisites are established. *McFaddin v. Commissioner of Internal Revenue*, 148 F. 2d 570 (C. A. 5, 1945); *Brown v. Commissioner of Internal Revenue*, supra; *Snell v. Commissioner of Internal Revenue*, supra; *Commissioner of Internal Revenue v. Boeing*, supra, p. 309; *Welch v. Solomon*, 99 F. 2d 41, 43 (C.A. 9, 1938).

between the two extremes. *Boomhower* v. *United States, supra,* discusses many of the cases where the courts have had to draw the line between (1) merely holding real estate for sale and (2) engaging in activities which constitute a course of business of selling real estate.

Here the taxpayer had the land filled in order to make it suitable for urbanization. He hired an engineer who drew a plan of urbanization which was approved by the Planning Board. He laid out streets and established all the facilities required by the Planning Board, for which he spent approximately $69,000. He had sold 7 of the 35 lots as of the date of the trial, having exchanged, given away, or rented others. He was holding the remaining lots for sale to individuals. If Nolla had sold the 4-acre tract as a whole—before or after his expenditures to urbanize it—we might have a different question. But here not only did he take all the steps and make all the expenditures for urbanization and subdivision into lots, but he was also engaged individually in selling for his own profit the said lots. Under these circumstances we think the Superior Court correctly classified the taxpayer, with reference to these lots, as a person holding real estate for sale in the ordinary course of his business. *Brown* v. *Commissioner of Internal Revenue, supra; Ehrman* v. *Commissioner of Internal Revenue,* 120 F.2d 607 (C.A. 9, 1941), cert. denied 314 U. S. 668; *Palos Verdes Corp.* v. *United States,* 201 F.2d 256 (C.A. 9, 1952) ; *Shearer* v. *Smyth,* 116 F. Supp. 230 (Dist. Ct., Calif., 1953). [4]

---

[4] In the *Ehrman* case the Court rejected the theory that if sales are solely for liquidation, they cannot constitute carrying on a business. It used the following language, which has been frequently cited, with approval, at p. 610: "We fail to see that the reasons behind a person's entering into a business—whether it is to make money or whether it is to liquidate—should be determinative of the question of whether or not the gains resulting from sales are ordinary gains or capital gains. The sole question is—were the taxpayers in the business of subdividing real estate? If they were, then it seems indisputable that the property sold falls within the exception . . . in the statute above quoted—that is, that it constituted 'property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business'." To the

This case is distinguishable on its facts from *Farley* v. *Commissioner*, 7 T.C. 198 (1946).[5] In that case the Court held that the sales resulted in capital gains rather than ordinary income. It said at p. 202: "Respondent contends primarily that the sales involved were so frequent and continuous as to constitute such activity a trade or business. It is unquestionably true that the frequency and continuity with which a particular activity is carried on is a primary consideration in determining whether such activity constitutes a trade or business. It is significant to note, however, that the cases which have applied this test to real estate transactions involved elements of development and substantial sales activity which are essentially lacking in the instant case. See *Richards* v. *Commissioner, supra; Snell* v. *Commissioner, supra; Welch* v. *Solomon, supra; Ehrman* v. *Commissioner, supra; Oliver* v. *Commissioner,* 138 Fed.(2d) 910; *Gruver* v. *Commissioner, supra; Brown* v. *Commissioner, supra; James Lewis Caldwell McFadden,* 2 T. C. 395. In none of these cases did the taxpayer maintain the passive posture held by petitioner in the instant case." It cannot be contended here that the taxpayer did not engage in development and sales activity or that he assumed the passive posture held

same effect, *Brown* v. *Commissioner of Internal Revenue, supra,* 470; *Commissioner of Internal Revenue* v. *Boeing, supra; Richards* v. *Commissioner of Internal Revenue, supra; Blake* v. *Kavanagh,* 107 F. Supp. 179, 183 (Dist.Ct., Mich., 1952).

[5] The facts in the *Farley* case are set forth in the headnote at pp. 198–9 as follows: "Petitioners, husband and wife, acquired in 1923 and 1925 real estate in New Orleans as community property. The property was acquired and used in connection with petitioners' nursery business. The property had been platted some years before purchase by petitioners. In 1937 the city of New Orleans built streets through the property at its own expense in accordance with the original plats. This was not desired or requested by petitioners, whose property was thus increased in value for residential purposes but decreased in value for use as a nursery. During the taxable year petitioners sold 25½ lots to various purchasers, realizing a profit thereon of $14,816.37. Petitioners made no active efforts to sell, but accepted such satisfactory offers as were made. Petitioners did not advertise the property for sale, hired no agents, erected no signs, did not list the property, or construct any improvements to facilitate its sale for residential purposes. . . . "

by the taxpayer in the *Farley* case. *Carroll* v. *Commissioner*, 21 B.T.A. 724 (1930) and *Farry* v. *Commissioner*, 13 T. C. 8 (1949), where land was held as investment for revenue and speculation rather than for sale to clients in the ordinary course of business, are likewise distinguishable from the case before us.

The cases in this field are sometimes difficult to reconcile. They have been called a "hodgepodge". Miller, *The "Capital Asset" Concept: A Critique of Capital Gains Taxation: 1*, 59 Yale L. J. 837, 863, footnote 134; *id.*, p. 877. This is partly due to the circumstance that each case must be determined on its facts; it is also partly due to the lack of definiteness and precision in the statutory standard. *Miller, supra*, p. 860 *et seq.; cf. Higgins* v. *Commissioner*, 312 U. S. 212, and § 23 (*a*) (2) of the Internal Revenue Code as added by Revenue Act of 1942, § 121 (*a*), 56 Stat. 819. Some of the cases which may seem irreconcilable have been influenced by other factors which, in addition to the frequency and continuity of transactions, play a role in this field; *i.e.*, (1) purpose of acquisition, (2) proximity of sale to purchase, and (3) the amount of activity by the taxpayer and the time spent by him in the said business. See *Williamson* v. *Commissioner of Internal Revenue, supra*, p. 567; *Blake* v. *Kavanagh, supra*, p. 182; *Boomhower* v. *United States, supra*, p. 1002; Fink, *supra, pp.* 117–9; Miller, *supra*, p. 863–4; Prentice-Hall, *Federal Tax Service*, 1953, Vol. I, pp. 5008 *et seq.* In any event, whatever our difficulties may be in other cases as to whether profits on sales of real estate constitute ordinary income or capital gains, we find no error in the decision of the trial court holding that the profits from the sales in this case constituted ordinary income.

The judgment of the Superior Court will be affirmed.