JUAN G. NOLLA, demandante y apelante *v.* SECRETARIO DE HACIENDA, demandado y apelado.

Número 10778.

*Sometido:* 4 de noviembre de 1953. *Resuelto:* 24 de junio de 1954.

770

F. M. *Susoni, Jr.,* abogado del apelante; *Hon. Secretario de Justicia José Trías Monge* y *Juan Pedrosa, Jr., Procurador Auxiliar,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del tribunal.

La sec. 5(f) de la Ley de Contribuciones sobre Ingresos, según fué enmendada por la Ley núm. 150, Leyes de Puerto Rico, 1948 ((1) pág. 347), prescribe que se pagarán contribuciones sobre ingresos solamente sobre el 25% de los beneficios realizados en la venta de bienes raíces poseídos por un individuo a título de dueño por más de un año. Sin embargo, dicha sección también dispone que esta deducción no será aplicable a ventas efectuadas por un individuo de ". . . bienes raíces poseídos a título de dueño primordialmente para la venta a clientes en el curso ordinario de su industria o negocio . . .". La cuestión aquí envuelta es si, al efectuar ciertas ventas de bienes raíces, el contribuyente estaba en el negocio de venta de terrenos y debe por consiguiente pagar contribuciones sobre ingresos sobre el 100% en vez de sobre el 25% de los beneficios de tales ventas.

Durante varios años Juan G. Nolla se ha dedicado a diversos negocios. Vende efectos eléctricos, es agricultor y desempeña el cargo de administrador de aduana en Arecibo. En 1935 adquirió en una venta judicial una parcela de 42 cuerdas cerca de Arecibo que ha venido dedicando al cultivo de cañas de azúcar. Luego, como resultado de la construcción de una nueva carretera, se separó del resto de dicha finca una parcela de 4 cuerdas que colinda con la carretera en una extensión de unos 150 metros. Las 4 cuerdas quedaron inservibles para fines agrícolas con motivo de la construcción de la carretera. Ante esa situación, en 1948 el demandante procedió a urbanizar y lotificar la parcela de 4 cuerdas para poder vender solares. Cumplió con los requisitos de la Junta de Planificación, invirtiendo en ello aproximadamente $69,000, y resultando un número de solares con un área total de 14,076.74 metros cuadrados, los que puso a la venta como solares individuales.

Durante 1949 Nolla vendió un solar y otro le fué expropiado por la Autoridad de Acueductos y Alcantarillados.[1] Al informar sus ingresos por la venta de estos dos solares en su planilla para 1949, Nolla pagó contribución sobre el 25% de los beneficios. El Tesorero le notificó una deficiencia por el fundamento de que debería haber pagado contribuciones sobre el 100% de los beneficios provenientes de estas ventas. Nolla instó querella ante el anterior Tribunal de Contribuciones para que se dejara sin efecto esta deficiencia. Luego de un juicio en los méritos, se desestimó la querella por el Tribunal Superior, al cual fueron transferidos todos los casos que estaban pendientes en el anterior Tribunal de Contribuciones. El caso se encuentra ahora ante este Tri-

---

[1] Ninguna de las partes arguye que la disposición por expropiación en vez de por venta de uno de los solares presenta una situación distinta bajo las circunstancias de este caso. Después de radicada la demanda de expropiación, los bienes en cuestión fueron vendidos por el contribuyente a la Autoridad mediante una escritura que disponía un precio de venta mayor que el estimado hecho por la Autoridad en el pleito de expropiación.

bunal en virtud de la apelación establecida por el contribuyente contra la sentencia dictada por el Tribunal Superior.

 Arguye el contribuyente que él vendría obligado a pagar contribuciones sobre el 100% en vez de sobre el 25% de los beneficios provenientes de la venta de bienes raíces solamente si él hubiera *comprado* los bienes con el fin primordial de reventa. Esta contención fué específicamente rechazada en *Richards* v. *Commissioner of Internal Revenue,* 81 F.2d 369, 372-3 (C.A. 9, 1936). En el caso de *Richards* el contribuyente había comprado los bienes, originalmente, lo mismo que aquí, para fines agrícolas. Luego, igual que en este caso, con motivo de haber cambiado las condiciones, lotificó y vendió solares para fines de urbanización. Trazó los solares y asumió los gastos de las instalaciones de gas, electricidad y agua para aquéllos. La corte resolvió (1) que la norma era determinar si los bienes se "poseían" para revenderlos, no si se compraron originalmente para la reventa, y (2) que las actividades del contribuyente lo colocaron dentro de la excepción y exigían el pago de la contribución al tipo completo. Al mismo efecto, *Brown* v. *Commissioner of Internal Revenue,* 143 F.2d 468 (C.A. 5, 1944); *Boomhower* v. *United States,* 74 F.Supp. 997, 1007 (Dist. Ct., Iowa, 1947).

No puede dudarse que en este caso los bienes se poseían para "la venta a clientes . . .". La lotificación del terreno para ajustarlo a las necesidades de los compradores individuales y las ventas posteriores de los solares evidenciaban estos fines. *Gruver* v. *Commissioner of Internal Revenue,* 142 F.2d 363, 367 (C.A. 4, 1944), y casos citados; Fink, *"Dealing" in Real Estate,* 2 Tax.L.Rev. 111, 114. En verdad, el contribuyente en este caso no alega lo contrario.(²)

---

(²) En algunos· casos surge el problema sobre si el contribuyente posee los bienes *primordialmente* para fines de reventa o con algún otro propósito. Véanse Fink, supra, 113, y casos citados; *Rollingwood Corp.* v. *Commissioner of Internal Revenue,* 190 F.2d 263 (C.A. 9, 1951); *United States* v. *Bennett,* 186 F.2d 407 (C.A. 5, 1951); *Comment,* 39 Calif. L.Rev. 528, 532. El contribuyente no alega eso aquí. Indudablemente estaba lotificando con el propósito de *vender* solares.

El hecho más importante, y el más difícil, de determinar es si la venta se hizo "en el curso ordinario de [la] industria o negocio [del contribuyente] . . .". Esto no quiere decir que el negociar en bienes raíces deba ser el único, o aun el principal, negocio del contribuyente. Por el contrario, el contribuyente, como en este caso, puede ocuparse de otros negocios en los cuales invierta más tiempo y dinero que en el de bienes raíces y aún quedar cubierto por la regla de que sus ventas ocurrieron en el curso ordinario de su negocio. *Williamson* v. *Commissioner of Internal Revenue*, 201 F.2d 564 (C.A. 4, 1953); *Commissioner of Internal Revenue* v. *Boeing*, 106 F.2d 305 (C.A. 9, 1939); *Snell* v. *Commissioner of Internal Revenue*, 97 F.2d 891 (C.A. 5, 1938); *Calvelli* v. *Commissioner*, 43 B.T.A. 6 (1940).([3]) Al determinar si las ventas caen dentro de la última categoría, la frecuencia y continuidad de tales transacciones es un factor importante. *Rollingwood Corp.* v. *Commissioner of Internal Revenue*, supra; *Commissioner of Internal Revenue* v. *Boeing*, supra, 309, cert. denegado 308 U. S. 619; 3 Mertens, *Law of Federal Income Taxation*, sec. 22.08, págs. 699–701, escolio 70, y casos citados en el Suplemento de 1953, págs. 280–90. Si una parcela grande de terreno se lotifica y sistemática y regularmente se venden solares de la misma en número sustancial, el contribuyente claramente se dedica al negocio de venta de bienes raíces. *Snell* v. *Commissioner of Internal Revenue*, supra. Por otro lado, una venta de terreno casual y aislada es considerada como una transacción de capital. *512 W. Fifty-Sixth St. Corp.* v. *Commissioner of Internal Revenue*, 151 F.2d 942 (C.A. 2, 1945); *Miller* v. *Commissioner*, 20 B.T.A. 230 (1930). Los casos difíciles son aquéllos que caen en

---

([3]) En verdad, el contribuyente no tiene que dedicar parte alguna de su tiempo al negocio. Si actúa a través de agentes o de contratistas independientes, se le considera aún como en el negocio de venta de bienes raíces, siempre que se establezcan los otros requisitos. *McFaddin* v. *Commissioner of Internal Revenue*, 148 F.2d 570 (C.A. 5, 1945); *Brown* v. *Commissioner of Internal Revenue*, supra; *Snell* v. *Commissioner of Internal Revenue*, supra; *Commissioner of Internal Revenue* v. *Boeing*, supra, pág. 309; *Welch* v. *Solomon*, 99 F.2d 41, 43 (C.A. 9, 1938).

algún punto entre los dos extremos. El caso de *Boomhower* v. *United States,* supra, discute muchos de los casos en que los tribunales han tenido que trazar la línea entre (1) simplemente poseer bienes raíces para la venta y (2) dedicarse a actividades que constituyen el operar un negocio de venta de bienes raíces.

■ ■ Aquí el contribuyente rellenó el terreno a fin de prepararlo para urbanizarlo. Contrató un ingeniero que hizo un plano de urbanización, el cual fué aprobado por la Junta de Planificación. Trazó calles y estableció todas las facilidades exigidas por la Junta de Planificación, invirtiendo en esto alrededor de $69,000. Había vendido 7 de estos 35 solares para la fecha de la vista, y había permutado, donado o cedido en arrendamiento otros. Reservaba los solares restantes para venderlos a personas particulares. Si Nolla hubiera vendido la parcela de 4 cuerdas como una sola unidad—antes o después de sus gastos para urbanizarla—la cuestión podría ser otra. Pero aquí él no solamente llevó a efecto todas las gestiones y efectuó todos los gastos de urbanización y lotificación de solares, sino que también se dedicaba individualmente a vender los mismos para beneficio propio. Bajo dichas circunstancias somos de opinión que el Tribunal Superior correctamente clasificó al contribuyente, con respecto a estos solares, como una persona que posee bienes raíces para la venta en el curso ordinario de su negocio. *Brown* v. *Commissioner of Internal Revenue,* supra; *Ehrman* v. *Commissioner of Internal Revenue,* 120 F.2d 607 (C.A. 9, 1941), cert. denegado 314 U. S. 668; *Palos Verdes Corp.* v. *United States,* 201 F.2d 256 (C.A. 9, 1952) ; *Shearer* v. *Smyth,* 116 F.Supp. 230 (Dist.Ct., Calif., 1953).(4)

---

(4) En el caso de *Ehrman* la Corte rechazó la teoría de que si las ventas son solamente para liquidar, las mismas no pueden constituir la dedicación a un negocio. Empleó el siguiente lenguaje, que se ha citado frecuentemente, con aprobación, a la pág. 610: "No podemos ver que los motivos que una persona pueda tener para iniciarse en un negocio—bien sea con fines de lucro o bien para liquidarlo—deben ser determinantes de la cuestión sobre si los beneficios provenientes de las ventas son ingresos corrientes o ganancias de capital. La única cuestión es—¿estaban los contribuyentes─

Este caso es distinguible por sus hechos del de *Farley* v. *Commissioner*, 7 T.C. 198 (1946).(⁵) En dicho caso la Corte resolvió que las ventas resultaron en ganancias de capital más bien que en ingreso corriente. Dijo el tribunal a la pág. 202: "El demandado sostiene primordialmente que las ventas de que se trata eran tan frecuentes y continuas que tal actividad constituía una industria o negocio. Es indudable que la frecuencia y continuidad con que se lleva a efecto una actividad específica es una consideración primordial para determinar si tal actividad constituye una industria o negocio. Es significativo indicar, sin embargo, que los casos que han aplicado esta norma a transacciones de bienes raíces envolvían elementos de fomento y actividades sustanciales de ventas que están esencialmente ausentes en el presente caso. Véanse *Richards* v. *Commissioner*, supra; *Snell* v. *Commissioner*, supra; *Welch* v. *Solomon*, supra; *Ehrman* v. *Commissioner*, supra; *Oliver* v. *Commissioner*, 138 F.2d 910;

---

en el negocio de lotificar bienes raíces? Si lo estaban, parece entonces fuera de toda duda que los bienes vendidos caen dentro de la excepción . . . en el estatuto antes citado—es decir, que constituían 'bienes poseídos por el contribuyente primordialmente para vendérselos a clientes en el curso ordinario de su industria o negocio'." Al mismo efecto, *Brown* v. *Commissioner of Internal Revenue*, supra, 470; *Commissioner of Internal Revenue* v. *Boeing*, supra; *Richards* v. *Commissioner of Internal Revenue*, supra; *Blake* v. *Kavanagh*, 107 F. Supp. 179, 183 (Dist.Ct., Mich., 1952).

(⁵) Los hechos en el caso de *Farley* se exponen en el sumario a las págs. 198–9 como siguen: "Los peticionarios, marido y mujer, adquirieron en 1923 y 1925 bienes raíces en Nueva Orleans en calidad de gananciales. La propiedad fué adquirida y utilizada en relación con el negocio de vivero de plantas de los peticionarios. Se había lotificado la propiedad algunos años antes de que los peticionarios la adquirieran. En 1937 la ciudad de Nueva Orleans construyó calles a través de esta propiedad por su propia cuenta de conformidad con la lotificación original. Los peticionarios ni querían ni solicitaron esto, lo que si bien aumentó el valor de la propiedad para fines residenciales, también disminuyó su valor para usarse como vivero. Durante el año contributivo los peticionarios vendieron 25½ solares a varios compradores, efectuando una ganancia de $14,816.37 sobre los mismos. Los peticionarios no hacían esfuerzo alguno para vender, pero aceptaban cuantas ofertas satisfactorias se hacían. No anunciaron los bienes para la venta, no contrataron agentes, no construyeron cartelones, no anotaron con corredores la propiedad para venta, y no construyeron mejoras para facilitar su venta con fines residenciales. . . . "

*Gruver* v. *Commissioner*, supra; *Brown* v. *Commissioner*, supra; *James Lewis Caldwell McFadden*, 2 T.C. 395. En ninguno ·de estos casos mantuvo el contribuyente la actitud pasiva observada por el peticionario en este caso." No puede sostenerse aquí que el contribuyente no se dedicó a actividades de fomento y venta o que asumió la actitud pasiva del contribuyente en el caso de *Farley*. Los casos de *Carroll* v. *Commissioner*, 21 B.T.A. 724 (1930) y *Farry* v. *Commissioner*, 13 T.C. 8 (1949), donde se poseían terrenos para inversiones con fines de lucro y especulación y no para venta a clientes en el curso ordinario de un negocio, son igualmente distinguibles del caso de autos.

Los casos en este campo son a veces difíciles de reconciliar. Se les ha llamado un "mare mágnum". Miller, *The "Capital Asset" Concept: A Critique of Capital Gains Taxation: 1*, 59 Yale L.J. 837, 863, escolio 134; id., pág. 877. Esto se debe en parte a la circunstancia de que cada caso debe resolverse por sus hechos; también se debe en parte a la falta de precisión y de claridad en la norma estatutaria. Miller, supra, pág. 860 *et seq.; cf. Higgins* v. *Commissioner*, 312 U. S. 212, y la sec. 23 (*a*) (2) del Código de Rentas Internas según fué adicionado por la Ley de Rentas de 1942, sec. 121 (*a*), 56 Stat. 819. Algunos de los casos que quizás parecen ser irreconciliables han sido influídos por otros factores que, en adición a la frecuencia y continuidad de las transacciones, juegan un papel en este campo; v.g., (1) propósito de la adquisición, (2) proximidad de la venta a la compra, y (3) la cuantía de la actividad realizada por el contribuyente y·el tiempo invertido por él en dicho negocio. Véanse *Williamson* v. *Commissioner of Internal Revenue*, supra, pág. 567; *Blake* v. *Kavanagh*, supra, pág. 182; *Boomhower* v. *United States*, supra, pág. 1002; Fink, supra, págs. 117–9; Miller, supra, pág. 863–4; P-H *Fed. Tax Serv.*, 1953, vol. I, págs. 5008 *et seq.* De cualquier modo, cualesquiera que puedan ser nuestras dificultades en otros casos sobre si los bene-

ficios provenientes de ventas de bienes raíces constituyen ingreso corriente o ganancia de capital, no encontramos error alguno en la decisión del tribunal sentenciador al efecto de que los beneficios provenientes de las ventas en este caso constituyeron ingreso corriente.

*La sentencia del Tribunal Superior será confirmada.*