Harlan O. Carlson and Mildred C. Carlson, husband and wife, et al. [1] v. Commissioner. Carlson v. Commissioner
Docket Nos. 65856, 65857, 70624, 70625. 9.
United States Tax Court
T.C. Memo 1959-239; 1959 Tax Ct. Memo LEXIS 9; 18 T.C.M. (CCH) 1143; T.C.M. (RIA) 59239; December 24, 1959
*9 Petitioners were owners of a corporation engaged in the business of building and selling houses. In 1950, petitioners formed a partnership which bought a rooming house as an investment. In 1952, the partnership acquired six unimproved lots and built apartment buildings thereon. The apartments were first rented and then the properties were advertised for sale, and all of them were sold in 1953 and 1954. Held, at the time of their sale the apartment properties, except the rooming house, were held primarily for sale to customers in the ordinary course of business and the gain on the sales is taxable as ordinary income. Maurice Weinstein, Esq., 623 North 2nd Street, Milwaukee, Wis., and Byron Axel, Esq., for the petitioners. James T. Wilkes, Jr., Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: This consolidated proceeding involves deficiencies in income tax determined against petitioners as follows: Petitioners
Dkt. No.
Year
Deficiency
Harlan O. Carlson and Mildred C. Carlson
65856
1953
$5,856.06
65856
1954
3,373.83
70625
1955
1,205.01
Joseph N. Futowsky and Jean Futowsky
65857
1953
5,566.76
65857
1954
3,324.24
70624
1955
1,200.85
The sole issue is whether certain *10 apartment properties sold by a partnership during its fiscal years ending March 31, 1953, 1954 and 1955 constituted property held primarily for sale to customers in the ordinary course of a trade or business, so that the profit therefrom was taxable as ordinary income rather than as capital gain. Since trial of this case, respondent has conceded that gain from the sale of a rooming house is entitled to treatment as long-term capital gain, and petitioners have conceded that gain from the sale of their stock in 600 West Capitol Drive, Inc., is gain from the sale of stock in a collapsible corporation and taxable as ordinary income. Findings of Fact Some of the facts are stipulated and are hereby found as stipulated. Petitioners Harlan O. Carlson and Mildred C. Carlson, husband and wife, and petitioners Joseph N. Futowsky and Jean Futowsky, husband and wife, resided in Milwaukee, Wisconsin, and filed respective joint income tax returns for the calendar years 1953, 1954 and 1955 with the district director of internal revenue at Milwaukee, Wisconsin. In 1948, Harlan and Joseph (to whom "petitioners" will hereafter refer) organized the Harjo Corporation to construct and sell homes. Each, *11 with his respective spouse, owned a one-half interest in the corporation Harlan, an electrical engineer, supervised all building operations, the field work, and other functions relating to the actual erection of the homes. Joseph, an attorney, served as secretary-treasurer of the corporation and was responsible for the administration of the business, including financing, selling and subcontracting. He also devoted about 5 per cent of his time to the active practice of law. Since 1948, Joseph has held a real estate broker's license. During the period beginning with its organization through 1958, the corporation constructed a total of 324 homes which were sold for a total sales price of $4,772,994.98, 129 of which were sold for $1,920,121.99 during the 3 years here in issue. It also bought and sold other real estate during this period. From 1952 through 1954, Harlan and Joseph together owned a 50 per cent stock interest in Harjo Realty Co., Inc., a corporation that they organized with another individual as a real estate brokerage firm, primarily to handle the sales of the homes constructed by Harjo Corporation. In April 1950, petitioners formed a partnership in which each had a 50 *12 per cent interest. Partnership returns were filed on a fiscal year basis for the years ending March 31, 1953, 1954 and 1955 with the district director of internal revenue at Milwaukee, Wisconsin. During the time of its existence, the partnership acquired and sold 7 parcels of property, 4 of which constitute those here in issue. The first property purchased by the partnership on April 12, 1950 was a rooming house located on E. Lyon Street. This property was sold in January 1953, and respondent has agreed that it was not held by the partnership for sale in the ordinary course of business and, consequently, the gain therefrom is entitled to capital gain treatment. On September 30, 1952, the partnership purchased a lot on W. Capitol Drive and, after approximately 5 1/2 months, sold it to a corporation known as 600 West Capitol Drive, Inc., which proceeded to construct thereon an apartment building. Petitioners participated in the organization of this corporation, and in January 1955, after construction of the apartment, they with the other stockholders sold their stock. Petitioners have accepted respondent's determination that their gain was received from the sale of stock in a collapsible *13 corporation. Shortly after acquiring the other five properties, the partnership commenced and completed construction of five 8-family apartment buildings thereon. The details concerning the acquisition and sale of these properties are as follows: Fiscal Year Ending March 31, 1953
Date
Constructi
Date
Cost
Sales
on
Location
Purchased
Completed
Sold
Basis
Price
Gain
4275 N.
3/28/52
7/20/52
2/26/53
$45,957.85
$63,826.60
$17,868.75
27th St.
1981 W.
9/ 4/52
1/ 1/53
2/26/53
50,406.25
63,630.23
13,223.98
Villard
Ave.
Fiscal Year Ending March 31, 1954
1111 W.
a1 4/28/52
10/ 1/52
8/31/53
47,506.11
a2
13,335.46
Atkinson
62,511.67
Ave.
3824 N.
6/18/52
11/ 5/52
6/ 1/53
48,831.75
3a
12,908.06
20th St.
63,239.81
Fiscal Year Ending March 31, 1955
1969 W.
9/ 4/52
2/28/53
4/30/54
47,918.90
57,013.32
9,094.42
Villard
Ave.
Following completion of construction of the apartment buildings, the partnership sought tenants for the apartments and most of the apartments were rented at the time of sale. With respect to the sale of 1981 W. Villard Avenue, which was held for 56 days, petitioners each reported their one-half share of the gain as short-term capital gain. However, gains on the sale of the *14 other four properties, reported by petitioners as long-term capital gains, form the basis of the deficiencies herein determined by respondent. An unspecified number of the six unimproved lots were purchased by the partnership directly from petitioners' Harjo Corporation. Most of the properties were sold by Harjo Realty Co., Inc., which advertised them and obtained prospective purchasers. Joseph handled the closing of each of the sales. The properties were advertised for sale in the Milwaukee Journal, a daily newspaper, on the following dates: Property
Date of Advertisement a1
1111 W. Atkinson Ave.
Nov. 16, 23, 30, 1952
Nov. 30, 1952
3824 N. 20th Street
Dec. 7, 14, 21, 28, 1952
Jan. 4, 11, 1953
1981 W. Villard Ave.
Jan. 18, 25, 1953
Prior to the sale of the completed apartment houses, Joseph handled all of the activities in connection with their management, including maintenance and rentals. The partnership has engaged in no business activities after it sold the apartment at 1969 W. Villard Avenue in April 1954. The properties located at 4275 N. 27th Street, 1111 W. Atkinson Avenue, 3824 N. 20th Street and 1969 W. Villard Avenue were held by the partnership primarily for sale *15 to customers in the ordinary course of its business. Opinion Respondent determined that the apartment properties built and sold by the Carlson-Futowsky partnership during its fiscal years ending March 31, 1953, 1954 and 1955 were held primarily for sale to customers in the ordinary course of the partnership business, and that the gain realized is ordinary income. Sec. 117(a) and (j), I.R.C. 1939, and secs. 1221 and 1231, I.R.C. 1954. Petitioners contend that the apartment houses were built for investment purposes, but had to be sold when Joseph became ill and could not continue to manage the properties, and that the sales were in liquidation of capital assets and capital gain resulted. The question with which we are concerned under the above sections is whether the real estate sold was held primarily for sale to customers in the ordinary course of the partnership business. Similar questions have been involved in many cases and are often difficult to decide because there is no fixed pattern for this determination. Each case must be decided on its own facts. The courts in numerous cases have established a number of guideposts to aid in this decision, some of which are: The purpose or *16 reason for the taxpayer's acquisition of the property and in disposing of it; the continuity of sales or sales-related activity over a period of time; the frequency of sales, as opposed to isolated transactions; the activity of the seller or those acting in his behalf in developing and improving the property, soliciting customers, advertising, etc.; the extent or substantiality of the transactions. Pool v. Commissioner, 251 F. 2d 233 (C.A. 9), affirming T.C. Memo. 1956-64 [15 TCM 296], certiorari denied 356 U.S. 938; Pennroad Corp. v. Commissioner, 261 F. 2d 325 (C.A. 3), affirming 29 T.C. 914, certiorari denied 359 U.S. 958; W. T. Thrift, Sr., 15 T.C. 366; Wellesley A. Ayling, 32 T.C. 704; Boomhower v. United States, 74 F. Supp. 997 (N.D. Iowa). But these factors are only guides and no one of them is decisive. Each should be accorded such weight as the circumstances in the particular case warrant and as the evidence in support thereof justifies. In our opinion the test must be more objective than subjective. A taxpayer's own characterization of his purpose in acquiring and holding property, while entitled to consideration, should not alone be decisive that the property is *17 being held for investment purposes. A person cannot avoid ordinary income treatment of his gains on the sale of property by simply saying he bought the property for investment purposes when his activities in connection therewith constitute a business activity. Chandler v. United States, 226 F. 2d 403 (C.A. 7). The test is whether the taxpayer's course of conduct with respect to the particular property or properties constitutes the conduct of a business. It has also been held that the original status of property is not determinative of the question of whether it was, at the time of its sale, held for investment purposes or for sale to customers. Richards v. Commissioner, 81 F. 2d 369 (C.A. 9), affirming 30 B.T.A. 1131. A taxpayer's claim that his only reason for selling real estate was to liquidate a capital asset rather than to conduct a business must be considered in the light of his activities in connection therewith. In Ehrman v. Commissioner, 120 F. 2d 607, 610 (C.A. 9), affirming 41 B.T.A. 652, certiorari denied 314 U.S. 668, the Court said: We fail to see that the reasons behind a person's entering into a business - whether it is to make money or whether it is to liquidate *18 - should be determinative of the question of whether or not the gains resulting from sales are ordinary gains or capital gains. The sole question is - were the taxpayers in the business of subdividing real estate? If they were, then it seems indisputable that the property sold falls within the exception in the definition of capital assets in the statute above quoted - that is, that it constituted "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." And of particular pertinence here is the statement made in Galena Oaks Corporation v. Scofield, 218 F. 2d 217, 220 (C.A. 5) "One may, of course, liquidate a capital asset. To do so it is necessary to sell. The sale may be conducted in the most advantageous manner to the seller and he will not lose the benefits of the capital gain provision of the statute, unless he enters the real estate business and carries on the sale in the manner in which such a business is ordinarily conducted. In that event, the liquidation constitutes a business and a sale in the ordinary course of such a business and the preferred tax status is lost." With these general principles in mind we have examined *19 the evidence in this case. We find two taxpayers who since 1948 have been engaged in the business of building homes for sale. The construction part of this business was conducted by Harjo Corporation, owned 50 per cent by each of petitioners and their wives. They also set up, with another individual, Harjo Realty Co., Inc., to sell the homes built by Harjo Corporation. The business took most of the time of both petitioners, Harlan conducting the construction part of the business and Joseph being in charge of the administrative, financing, selling and subcontracting part of the business, and each drew a salary of $26,000 per annum from Harjo Corporation. In 1950, petitioners decided they wanted to buy some real estate for investment purposes, so they formed a partnership to acquire and hold the property separate and apart from their house-building business. In 1950, the partnership bought a rooming house on E. Lyon Street that was already completed and occupied. They acquired along with the apartment house the services of the resident manager who did most of the work herself. This property was admittedly acquired for investment purposes and petitioners' activities with relation thereto *20 were characteristic of one's dealings with investment property. The partnership acquired no additional property until 1952. At that time, according to the testimony of petitioners, they decided to invest further in apartment properties, but this time they bought unimproved real estate and had eight-family apartment buildings constructed thereon. The property appears to have been acquired, for the most part at least, from Harjo Corporation. The record does not disclose who built the buildings. However, the partnership became quite active for a period of about 2 years. On March 28, 1952, the partnership acquired property on 27th Street and construction of an eight-family apartment house thereon was commenced. This was followed by the purchase on April 28, 1952 of the Atkinson Avenue property, on June 18 by the N. 20th Street property, on September 4 by the two Villard Avenue properties, and on September 30 by the W. Capitol Drive property. Construction of eight-family apartment houses was started by the partnership on all of these properties except the W. Capitol Drive property. The latter property was sold to another corporation which petitioners helped form, which built an apartment *21 house thereon, after which petitioners immediately sold their stock therein. In the meantime, in about June 1952, the resident manager of the rooming house advised petitioners she would have to quit to take care of her child. Petitioners decided that they could not operate this property without this manager so they decided to sell it immediately. This property was advertised for sale extensively starting in June and was finally sold in January 1953. Construction of the new apartment house on N. 27th Street was completed in the latter part of July 1952 and apartments were rented. Construction of the other new apartment buildings was completed in October and November 1952 and in January and February 1953, and they were rented. There is no evidence with respect to rental terms. Joseph testified that he handled all the management of these properties including rental, collections, cleaning, repairs, etc., but made no effort to employ a manager or rental agent for them. Joseph also testified that these properties were acquired for long-range investment purposes but that he became ill in the latter part of 1952 and the management of the apartments became too much for him to handle, so he *22 and Harlan got together and decided to sell the apartments. Harlan testified that he envisioned a long-term holding of these properties, but that it became apparent that Joseph could not handle the apartments along with the Harjo business, which was their main venture, and since he did not have the time or experience to take over the management of the properties himself, they decided the only thing to do was to sell. This testimony is uncontradicted, as would be expected, but it is indefinite as to time and details and is uncorroborated by other evidence. There is no medical evidence concerning Joseph's illness, when it occurred, how it incapacitated him, or how long it lasted. Within a relatively short time after completion of construction of the apartment buildings, the properties were advertised for sale and were advertised more or less continuously thereafter until sold. Construction of the Atkinson Avenue property was completed October 1, 1952, and it was first advertised in the newspaper for sale on November 16, 1952. The 20th Street property was completed November 5, 1952 and advertised for sale November 30, 1952. The property at 1981 W. Villard Avenue was completed January *23 1, 1953 and was advertised for sale January 18, 1953. The properties were turned over to Harjo Realty Co., Inc., petitioners' sales organization, for sale but Joseph also participated in the selling activities, as was apparently the situation with respect to the houses built by Harjo Corporation. All of the properties were advertised as new apartments and "For Sale" signs were displayed on the properties. On the record before us we believe petitioners originally formed the partnership to purchase the Lyon Street property as an investment and that they held that property for investment purposes. In 1952, they decided to build some apartment houses and rather than use Harjo Corporation for this purpose, which was already in the business, they decided to use the partnership which already had a record as an investment enterprise. The only evidence on the question of whether they initially intended to hold these apartments for investment purposes is their own testimony that such was their purpose. But in view of what happened we doubt that they ever had a well defined or serious purpose to build and hold these properties as investments. We find it hard to believe that these two men, experienced *24 in the real estate business, would enter into an investment project of this magnitude without some plans for outside management of the properties, particularly where, as early as June 1952, they decided they would have to sell the rooming house just because the manager of that property advised them that she would have to quit. The Villard Avenue properties were bought and construction was started thereon at least 3 months after petitioners decided that they could not manage the Lyon Street property themselves. If there was a serious intent to build and hold these apartment houses for investment purposes, it seems highly unlikely that this project would have been abandoned so readily simply because one of the partners became lethargio and overburdened with work. Furthermore, the Villard Avenue properties and the W. Capitol Drive properties were acquired just a short time before some of the other properties were advertised for sale. The above facts are not indicative of a purpose to build these apartments for longrange investment purposes - either for rental income or for investment of funds. Actually, the partners' returns for the years 1952-1954 indicate the partners were withdrawing *25 the gains on the sale of real estate each year, and the partnership returns indicate that the gains on sales of real estate exceeded even the gross rental income each year. But even if petitioners did originally intend to build some apartment buildings for investment purposes, we do not believe this objective was ever effectively realized and the purpose was changed to selling these properties for a profit soon after the venture was started. Whatever their reason for this change of heart, if such there was, we find that by the time they started advertising these properties for sale, they had entered into the business of constructing and selling apartment house properties at a profit. This was no passive liquidation of properties held primarily for rental income. Within a relatively short time after construction of the apartment buildings was completed the properties were turned over to petitioners' real estate company for sale to anyone who would buy them. The selling activities with respect to these properties seem to have been very much the same as the selling activities in connection with the Harjo Corporation houses and seem to have been continued vigorously until the properties *26 were sold. Cf. Frieda E. J. Farley, 7 T.C. 198. It is true the partnership did not engage in many of these transactions, and we have taken that fact into consideration. However, it acquired and sold six of these properties within a period of 2 years, and when it is realized that each of these transactions involved a rather sizable project, and that petitioners built and sold five apartment houses within this period, that fact is not entitled to much weight. Both petitioners testified that their reason for liquidating was that Joseph became ill and could not carry the burden of managing all these properties. As noted above, the evidence is very indefinite as to when this came about, although both testified that it was probably in the latter part of 1952. However, several of these properties were first acquired and construction started thereon rather late in 1952, and construction of only three of the apartment buildings had been completed as late as November 5, 1952, and the other two were not completed until 1953. Yet the evidence is that no efforts or plans were made at any time to find an independent manager or rental agent for these properties. We have also given consideration *27 to the fact that of the six properties acquired by the partnership in 1952, four of them were held by the partnership for slightly more than 6 months after construction was completed, and another one, the W. Capitol Drive property, was sold unimproved, and at very little profit, to a collapsible corporation which petitioners helped organize and in which they held a considerable interest. While tax motives may have no bearing on the ultimate question of whether this was a real estate business, they may shed some light on petitioners' true intent and purpose in acquiring and selling these properties. We have concluded from all the evidence that all of the properties acquired and sold by the partnership during the years 1952, 1953 and 1954, except the Lyon Street property, were properties held by the partnership primarily for sale to customers in the ordinary course of its business and the gain thereon is taxable as ordinary income. Because of other concessions of the parties, Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Joseph N. Futowsky and Jean Futowsky, Husband and Wife, Docket Nos. 65857, 70624; and Harlan O. Carlson and Mildred C. Carlson, Husband and Wife, Docket No. 70625.↩
a1. or 5/26/52. ↩
a2. Sales Expense - $1,670.10. ↩
3a. Sales Expense - $1,500.↩
a1. All Sundays.↩